1  ROBERT L. URIARTE (SBN 258274)
   ruriarte@orrick.com
2  LI SHEN (SBN 307896)
   lshen@orrick.com
3  ORRICK, HERRINGTON & SUTCLIFFE LLP
   1000 Marsh Road
4  Menlo Park, CA 94025
   Telephone:    650 614 7400
5
   Attorneys for Defendant
6  ZOOSK, INC.

7

8                IN THE UNITED STATES DISTRICT COURT

9                 NORTHERN DISTRICT OF CALIFORNIA

10                        OAKLAND DIVISION

11 QUAD CITY PATENT, LLC,               Case No. 4:20-cv-01996-JST

12              Plaintiff,              **MOTION TO DISMISS PLAINTIFF'S
                                        FIRST AMENDED COMPLAINT**
13       v.
                                        Judge: Hon. Jon S. Tigar
14 ZOOSK, INC.,                         Date: July 1, 2020
                                        Time: 2:00 p.m.
15              Defendant.              Courtroom: 6

16

17

18

19

20

21

22

23

24

25

26

27

28

# NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on July 1, 2020 at 2 p.m., or as soon thereafter as counsel may be heard, defendant Zoosk, Inc. ("Zoosk") will, and hereby does, move the Court, located at 1301 Clay Street, 2nd Floor, Courtroom 6, Oakland, California, for an order dismissing with prejudice all claims in the First Amended Complaint for Patent Infringement ("FAC") filed by plaintiff Quad City Patent, LLC. Zoosk brings this motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that the complaint fails to state a plausible theory of infringement as required by Rule 8, and that the asserted patent, U.S. Patent No. 7,272,575 ("the '575 Patent"), claims ineligible subject matter under 35 U.S.C. § 101 and, therefore, the cannot support any claim for relief. This motion is based on the following Memorandum of Points and Authorities, the current record, arguments of counsel, and all matters of which the Court may take judicial notice.

# TABLE OF CONTENTS

**Page No**.

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

INTRODUCTION ............................................................................................................. 1

FACTUAL ALLEGATIONS ................................................................................................ 2

LEGAL STANDARD ........................................................................................................ 3

ARGUMENTS ................................................................................................................. 3

I.      The FAC fails to allege a plausible infringement theory .................................... 3

      A.      Plaintiff Cannot Plausibly Allege that Zoosk Directly Infringes ........... 4

      B.      Plaintiff Cannot Plausibly Allege that Zoosk Indirectly Infringes ........ 6

II.    The '575 Patent claims Ineligible Subject Matter Under §101 ........................ 7

      A.      Alice Step One: the '575 Patent is Directed to the Fundamental Economic
              Practice of Matching Buyers and Sellers .............................................. 8

      B.      Alice Step Two: the '575 Patent Lacks an Inventive Concept.............. 11

           1.      The '575 Patent's Generic Computers and Conventional Computer
                      Functions Add No Inventive Concept ...................................... 12

           2.      The '575 Patent's Arrangement of Conventional Method Steps
                      Adds No Inventive Concept ...................................................... 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*24/7 Customer, Inc. v. LivePerson, Inc.,*
    2017 WL 2311272 ...................................................................................................10

*24/7 Customer v. LivePerson, Inc.,*
    2017 U.S. Dist. LEXIS 81479 (N.D. Cal. 2017)..........................................................11

*Affinity Labs of Tex., LLC v. DIRECTV, LLC,*
    838 F.3d 1253 (Fed. Cir. 2016)..................................................................................10

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l,*
    573 U.S. 208 (2014) ......................................................................................... *passim*

*AlterG, Inc. v. Boost Treadmills LLC,*
    388 F.Supp.3d 1133 (N.D. Cal. 2019) ..........................................................................6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ....................................................................................................3

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ....................................................................................................3

*Bot M8 LLC v. Sony Corp. of Am.,*
    2020 WL 418938 (N.D. Cal. Jan. 27, 2020) .................................................................5

*buySAFE, Inc. v. Google, Inc.,*
    765 F.3d 1350 (Fed. Cir. 2014)....................................................................................9

*Cisco Sys., Inc. v. Uniloc USA, Inc.,*
    386 F. Supp. 3d 1185 (N.D. Cal. 2019) ........................................................................8

*Cleveland Clinic Found. v. True Health Diagnostics LLC,*
    859 F.3d 1352 (Fed. Cir. 2017)..................................................................................13

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,*
    776 F.3d 1343 (Fed. Cir. 2014).............................................................................3, 10

*Dropbox, Inc. v. Synchronoss Techs., Inc.,*
    371 F. Supp. 3d 668 (N.D. Cal. 2019) ..........................................................................8

*Elec. Power Grp., LLC v. Alstom S.A.,*
    830 F.3d 1350 (Fed. Cir. 2016)....................................................................................8

*Enfish, LLC v. Microsoft Corp.,*
    822 F.3d 1327 (Fed. Cir. 2016)..................................................................................10

*FuzzySharp Techs. Inc. v. Nvidia Corp.*,
   2013 WL 2249707 (N.D. Cal. Apr. 18, 2013) .................................................................7

*Ghaly Devices LLC v. Humor Rainbow, Inc.*,
   2020 WL 1140749 (S.D.N.Y Mar. 6, 2020) .........................................................10, 12

*Jackson v. Long*,
   289 So. 2d 205 (La. Ct. App. 1974) ..................................................................9, 15

*K-Tech Telecomms., Inc. v. Time Warner Cable, Inc.*,
   714 F.3d 1277 (Fed. Cir. 2013) ..........................................................................4

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ............................................................................3

*LendingTree, LLC v. Zillow, Inc.*,
   656 F. App'x 991 (Fed. Cir. 2016) (unpublished) ............................................9

*Moore v. Minneapolis*,
   43 Minn. 418 (1890) ...........................................................................................9

*Morsa v. Facebook, Inc.*,
   77 F. Supp. 3d 1007 (C.D. Cal. 2014) .................................................8, 9, 13, 14

*N. Star Innovations, Inc. v. Micron Tech., Inc.*,
   2017 WL 5501489 (D. Del. Nov.16, 2017) .......................................................5

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   788 F.3d 1359 (Fed. Cir. 2015) .....................................................................8, 12

*Open Text S.A. v. Alfresco Software Ltd.*,
   2014 WL 4684429 (N.D. Cal. Sep. 19, 2014) ..............................................14

*Ottah v. Fiat Chrysler*,
   884 F.3d 1135 (Fed. Cir. 2018) .........................................................................4

*PlanetID, LLC v. Digify, Inc.*,
   Case No. 19-cv-04615-JST, Dkt. No. 30, Order Granting Motion to Dismiss
   (Mar. 20, 2020) .................................................................................................14

*Procter & Gamble Co. v. QuantifiCare Inc.*,
   288 F.Supp. 3d 1002 (N.D. Cal. 2017) ...........................................................10, 12

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) .......................................................................16

*Semantic Search Techs. LLC v. Aldo U.S., Inc.*,
   425 F.Supp.3d 758 (E.D. Tex. Aug. 21, 2019) .................................................9

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
    873 F.3d 1364 (Fed. Cir. 2017) ...........................................................................11

*Symantec Corp. v. Zscaler, Inc.*,
    No. 17-cv-04414-JST, Dkt. No. 169 (N.D. Cal. Mar. 4, 2019) ...........................13, 14

*Uniloc USA, Inc. v. LG Elecs. USA, Inc.*,
    957 F.3d 1303 (Fed. Cir. 2020) ..............................................................................8

*Valentine Comms., LLC v. Six Continents Hotels, Inc.*,
    389 F.Supp. 3d 1223 (N.D. Ga. Jan. 9, 2019) ...................................................10, 12

*Walker Digital, LLC v. Google, Inc.*,
    66 F.Supp. 3d 501 (D. Del. Sept. 3, 2014) .............................................................10

**Statutes**

35 U.S.C. §101 ......................................................................................... *passim*

35 U.S.C. §271(b) .............................................................................................3

**Other Authorities**

Examiner's "Reasons for Allowance," ................................................................14

https://docviewer.zoosk.com/legal-tos-en.html ...................................................7

Rule 8 ...........................................................................................................1, 5

Rule 12(b)(6) ....................................................................................................3

U.S. Patent No. 7,272,575 ........................................................................ *passim*

www.zoosk.com .................................................................................................6

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Quad City Patent LLC accuses Zoosk of infringing U.S. Patent No. 7,272,575 ("the '575 Patent"), which claims a "method for facilitating a service marketplace between multiple *buyers and sellers of services*." FAC, Ex. A, '575 Patent, Claim 1. Zoosk's accused products, however, are *dating applications* that help people find dates. Because accusing a dating application of facilitating a "service marketplace" for "buyers and sellers of services" is implausible on its face, Plaintiff faced a steep uphill battle in attempting to plead sufficient factual allegations to raise its infringement claim from the speculative level to the plausible. Plaintiff has now had two chances to plead a serious infringement theory supported by plausible factual allegations, and it has not come close either time.[1] The FAC should be dismissed with prejudice under Rule 8 and the requirements of *Iqbal/Twombly*, as there is no set of facts Plaintiff can allege to bring Zoosk's dating applications within the scope of the '575 Patent.

In addition, the FAC should be dismissed with prejudice because the '575 Patent fails the *Alice* test for patent eligibility under 35 U.S.C. §101. *Alice's* two-step framework is easily applied here. At step one, a long line of cases supports the conclusion that the '575 Patent is directed to the type of fundamental economic practices that courts routinely find to be abstract ideas. As the FAC explains, the '575 Patent is "directed to a computer-implemented method for facilitating a services marketplace between multiple buyers and sellers of services." FAC ¶ 19. The method requires only the following basic steps: (i) defining a set of material offer terms; (ii) registering participants; (iii) compiling offers to sell services and request to buy services; (iv) evaluating and matching the offers; (v) communicating matches to buyers and sellers; and (vi) recognizing transaction participants by analyzing acoustic or imagery signals. *Id*. The patent does not teach any specific technology or technical improvements for carrying out these steps; it simply identifies

---

[1] The original complaint contained no factual allegations whatsoever about how Zoosk's dating applications infringe. *See* Dkt. 1. After laying out in a detailed letter the eligibility problems with Plaintiff's patent and noting the implausibility of the notion that Zoosk's dating applications could even possibly infringe, Zoosk voluntarily consented to Plaintiff's filing of the FAC in an attempt to address the issues presented in Zoosk's letter.

these abstract, high-level functions and instructs that they be carried out by generic computers.

At step two, analysis of the claims demonstrates that there is no inventive concept that transforms Plaintiff's abstract ideas into a patent-eligible invention. All of the method steps are inherent to any services marketplace (such as a staffing agency, for example), and the technological components discussed in the '575 Patent are merely off-the-shelf products being used in well-understood, conventional ways. Defining rules, compiling data, matching data according to the defined rules, and communicating the results of the matching are routine computer functions that cannot transform the '575 Patent's abstract marketplace method into a patentable invention.

### FACTUAL ALLEGATIONS

Zoosk is an online dating company headquartered in San Francisco. *See* FAC ¶ 8. The FAC describes Zoosk's services as "an online personals website." *Id.* Plaintiff Quad City is an Illinois limited liability company with a principal place of business in Moline, Illinois. FAC ¶5. The FAC fails to identify any product or service offered by Quad City.

The FAC accuses Zoosk's "Facebook Dating App," "iPhone Dating App," "Android Dating App," and "Zoosk Messenger" applications of infringing Claim 1 of the '575 Patent. FAC ¶12. But the FAC does not contain any allegations about what these applications do or how they operate. The FAC contains only a compilation of screen captures from Zoosk's website, pasted alongside the asserted claim limitations without any explanation or context. FAC ¶¶ 11-28.

Claim 1 is the only independent claim in the '575 Patent, which is titled "Method and System for Facilitating Service Transactions." FAC, Ex. A. Claim 1 recites a "computer-implemented method for facilitating a service marketplace between multiple buyers and sellers of services," but does not recite any specific computer components required to perform the claimed method. '575 Patent, Claim 1. The method comprises the following steps:

defining a set of service classifications and material terms;

registering a plurality of participants of the service marketplace;

compiling offers to sell services and requests to buy services provided by said participants, wherein the offers and the requests are described in said set of service classification and material terms;

automatically evaluating and matching the offers and the requests, without human intervention, based upon the degree of identicalness of said set of service classification and material terms recited in the offers and the requests;
communicating to matched participants of the result generated by the evaluating and matching step;

the offers being unknown to service buyers and requests being unknown to service sellers prior to the communicating step; and recognizing at least one of speech, language, emotion, social intelligent, character and characteristics of at least one of the participants by analyzing acoustic or imagery signals collated with the at least one of the participants.

*Id.* (emphasis added).

## **LEGAL STANDARD**

A complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "Labels and conclusions" are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Whether a claim recites a patent-eligible subject matter under § 101 is a question of law that a district court may resolve by way of a motion to dismiss. *See, e.g., Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n,* 776 F.3d 1343, 1351 (Fed. Cir. 2014). Under the "incorporation by reference" doctrine, courts may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading," such as internet webpages, in deciding a Rule 12(b)(6) motion to dismiss. *Knievel v. ESPN,* 393 F.3d 1068, 1076 (9th Cir. 2005) (citations omitted, collecting cases).

## **ARGUMENTS**

## **I.    THE FAC FAILS TO ALLEGE A PLAUSIBLE INFRINGEMENT THEORY**

The FAC alleges that Zoosk directly infringes the '575 Patent by "making, using, advertising, importing, selling, and offering for sale [Zoosk] apps and services at Zoosk.com and operating [Zoosk] apps and Zoosk.com." FAC ¶ 38. The FAC further alleges that Zoosk "induce[s] infringement under 35 U.S.C. §271(b) by directing and controlling their customers, users, sellers, and buyers to use the infringing products and methods to infringe the '575 Patent." FAC ¶ 42. Both of these theories are factually unsupported and inherently implausible.

### A.    Plaintiff Cannot Plausibly Allege that Zoosk Directly Infringes

Plaintiff's direct infringement theory is implausible on its face: the '575 Patent claims a "service marketplace" for facilitating "offers to sell services and requests to buy services," '575 Patent Claim 1, but the accused products are dating applications that do not involve any offers to buy or sell anything.   Like any facially implausible claim, "an implausible claim for patent infringement rightly should be dismissed" at the pleading phase.  *K-Tech Telecomms., Inc. v. Time Warner Cable, Inc*., 714 F.3d 1277, 1284 (Fed. Cir. 2013).

Plaintiff's infringement allegations are unclear, but to the extent Zoosk understands the FAC, it appears that Plaintiff has two mutually exclusive infringement theories.   Under the first theory, Zoosk applications themselves are services marketplaces, and Zoosk users who are looking for dates are "buyers and sellers" making "offers to sell services and requests to buy services" within these marketplaces.  *See* FAC ¶ 40(a) (screen captures of "meet your next date" website page charted alongside "services marketplace" claim element), FAC ¶ 40 (d) & (e) (screen captures depicting "how [to] find and connect with other singles on Zoosk" and how to send "auto-reply" messages, charted alongside claim elements for "compiling offers" and "automatically evaluating offers"); FAC ¶ 16 (allegation that Zoosk's applications "permit buyers, sellers, and users" to "make purchases from…other users").  The FAC's attempt to cast Zoosk users looking for dates as "buyers and sellers" of services is precisely the type of facially implausible infringement theory that calls for dismissal with prejudice at the pleading phase.  *See, e.g., Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir. 2018) (affirming dismissal of complaint that accused in-car camera holders of infringing patent that claimed removable book-holder assembly).

The '575 Patent's specification forecloses the FAC's date-night-as-a-service theory.   For example, it defines "services" with reference to "the services classified according to the Universal Standard Products and Services Classification (UNSPSC) Code, the U.S. Standard Industrial Classification (SIC) system or the like," '575 Patent Col. 3:51-55, which are inherently commercial schemes that have no application to private individuals who agree to go on a date together.   There is no plausible scenario in which Zoosk users or dating applications define "service classifications" in order to arrange dates.  *See Id.*, Claim 1.  In addition, the specification defines "participants of

the Service Marketplace" as "*service providers* providing the above-mentioned services, *purchasers* intending to *purchase* services, and facilitators facilitating *transactions* of services." *Id*. at Col. 3:60-63 (emphasis added). The dates and social connections facilitated by Zoosk applications do not fit this bill—because they cannot be "purchased." The specification also defines the types of "offers" facilitated by the '575 Patent by reference to whether they are "binding" or not, *id*. at Col. 2:16-31, and states that purposes of the invention are to "leverage the market forces of supply and demand and to dynamically *reduce costs of operation*," and to "enable a participant to make *business decisions*." *Id*. at Col. 2:21-28 (emphasis added). Again, these concepts have no relation to Zoosk's dating applications. Zoosk users looking for dates are not commercial service providers, offers of a date cannot be "binding," dates are not "business decisions," and users cannot purchase anything from one another through Zoosk applications.

In light of the specification and claims, there is no plausible interpretation of the '575 Patent that reads on Zoosk's dating applications. The FAC contains no facts to suggest otherwise.[2] The bare allegation that Zoosk applications permit users to buy services from other users (FAC ¶ 16) is insufficient to plead infringement under Rule 8. *See, e.g., Bot M8 LLC v. Sony Corp. of Am.,* 2020 WL 418938, at *1 (N.D. Cal. Jan. 27, 2020) ("[a]llegations of infringement 'without explanation as to the how or why [] products infringe … do[] not lead to any inference that plaintiff may be entitled to relief.'") (quoting *PageMelding, Inc. v. ESPN, Inc*., 2012 WL 851574, at *2 (N.D. Cal. Mar. 13, 2012)); *N. Star Innovations, Inc. v. Micron Tech., Inc*., 2017 WL 5501489, at *2 (D. Del. Nov.16, 2017) ("There needs to be some facts alleged that articulate why it is plausible that the other party's product infringes that patent claim—not just the patentee asserting, in conclusory fashion, that it is so.").

Under a second infringement theory suggested by the FAC, the "services marketplace" is an applications marketplace (i.e., an app store) hosted at Zoosk.com, app users are buyers, and Zoosk is a seller of services. FAC ¶ 15 ("Defendants' apps are offered in its marketplace, the apps providing services to members of the marketplace being buyers and sellers of the services offered

---

[2] On the contrary, as discussed in Section I(b)below, the FAC's allegations establish conclusively that Zoosk *prohibits* users from selling services to one another.

by Zoosk...at Zoosk.com...via the apps"); *see also* FAC ¶ 14 (alleging that Zoosk offers for purchase "Zoosk coins" that can be used to buy "gifts or premium features" from Zoosk). Assuming *arguendo* that Zoosk operates an app marketplace at Zoosk.com that could possibly infringe the '575 Patent,[3] the FAC does not allege any facts about how the purported marketplace functions, much less facts to support an inference that the marketplace infringes any element of Claim 1 of the '575 Patent. For example, there is no allegation that Zoosk.com "automatically evaluat[es] and match[es] the offers and the requests [for applications], without human intervention," as required by Claim 1. The only mention of any automation activity by Zoosk is contained in FAC ¶ 40(e), which contains screen shots of Zoosk documentation discussing automatic messaging between Zoosk users.

Because the FAC fails to plead any plausible direct infringement theory, and because the materials incorporated by reference into the FAC show that it is not possible for Plaintiff to remedy the fundamental problems with its direct infringement allegations, the FAC should be dismissed with prejudice.

### B. Plaintiff Cannot Plausibly Allege that Zoosk Indirectly Infringes

"[L]iability for indirect infringement of a patent requires direct infringement." *AlterG, Inc. v. Boost Treadmills LLC*, 388 F.Supp.3d 1133, 1143 (N.D. Cal. 2019) (citing *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012)). All of the plausibility issues discussed above in Section I(A) apply *a foritori* to the FAC's allegation that Zoosk's dating app users infringe the '575 Patent, but the flaws in the FAC's induced infringement claim run even deeper.

As an initial matter, the FAC is devoid of factual allegations to support a plausible inference of infringement by Zoosk's users. The FAC merely attempts to allege that Zoosk itself directly

---

[3] Claim 1 of the '575 Patent claims a "marketplace" involving "multiple...sellers of services," so a Zoosk-specific app store where Zoosk sells its own applications and services—an no one else's— could not infringe the '575 Patent. But as review of zoosk.com makes clear, Zoosk operates no app store; rather, Zoosk's website shows that the accused applications are downloaded from third-party app stores. *See* www.zoosk.com *last visited May 23, 2020*. The Court may rely on www.zoosk.com in assessing the plausibility of Plaintiff's allegation, as this webpage is incorporated by reference throughout the FAC's infringement allegations. FAC ¶ 40.

infringes. Under either of Plaintiffs theories of direct infringement, Section I(a), *supra*, all steps of Claim 1 would be performed by Zoosk's computer system, not by the participants in the service marketplace: "defining," "registering" "compiling offers," "automatically evaluating and matching" and "communicating" steps are all steps performed by the marketplace system, not the marketplace participants. Indeed, Claim 1 includes an express claim element requiring that participants not know about the matched offers and requests until a communication from the marketplace system has occurred. '575 Patent Claim 1 ("…the offers being unknown to service buyers and requests being unknown to service sellers prior to the communicating step…"). Because the FAC does not allege that any of Zoosk's customers directly infringe Claim 1, there can be no induced infringement by Zoosk as a matter of law. *See, e.g., FuzzySharp Techs. Inc. v. Nvidia Corp.*, 2013 WL 2249707 at *2 (N.D. Cal. Apr. 18, 2013).

Nor are their sufficient allegations to suggest any inducement by Zoosk. FAC alleges that Zoosk induced infringement "by directing and controlling their customers, users, sellers, and buyers to use the infringing products and methods to infringe the '575 Patent," FAC ¶42, but the only factual support for this legal conclusion is the allegation that users "may not use [Zoosk's products] without agreeing to Defendants' contracts." *Id.* ¶43 (citing Zoosk's terms of service located at https://docviewer.zoosk.com/legal-tos-en.html). Invoking and relying upon Zoosk's terms of service was a fatal mistake. Zoosk's terms of service do not support a plausible inference of induced infringement, they conclusively foreclose it. Section 3 of Zoosk's terms of service forbids use of Zoosk's Services "in connection with any commercial endeavors," and Section 5 expressly prohibits "any advertising or solicitation to buy or sell any products or services through the use of the Services." *See* https://docviewer.zoosk.com/legal-tos-en.html *last visited May 23, 2020.*

## II.    THE '575 PATENT CLAIMS INELIGIBLE SUBJECT MATTER UNDER §101

The Supreme Court has established a two-part framework for determining patent eligibility under 35 U.S.C. § 101. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). First, a court determines whether the claims are directed to patent-ineligible concepts, such as fundamental economic concepts or laws of nature. *Id.* If so, courts consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional

elements "transform the nature of the claim" into a patent-eligible invention.  *Id.*

## A.  Alice Step One: the '575 Patent is Directed to the Fundamental Economic Practice of Matching Buyers and Sellers

At step one, "a court must evaluate the patent claims on their face and determine if the claims are directed to one of the three 'patent-ineligible concepts:' laws of nature, natural phenomena, or abstract ideas."  *Cisco Sys., Inc. v. Uniloc USA, Inc.*, 386 F. Supp. 3d 1185, 1193 (N.D. Cal. 2019) (citing *Alice*, 573 U.S. at 217, 219) (internal quotations omitted).  In cases involving software, the step one inquiry "often turns on whether the claims focus on specific asserted improvements in computer capabilities or instead on a process or system that qualifies an abstract idea for which computers are invoked merely as a tool."  *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303, 1306 (Fed. Cir. 2020).  Claims that recite "abstract ideas that use computers as tools" fail *Alice* step one.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016).

Claim 1, the only independent claim of the '575 Patent, is representative.  *See Dropbox, Inc. v. Synchronoss Techs., Inc.*, 371 F. Supp. 3d 668, 684 (N.D. Cal. 2019) (claim is representative if it "encapsulates the other claims") (citing *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, 873 F.3d 1364, 1368 n.7 (Fed. Cir. 2017) (if the claims "contain only minor differences in terminology but require performance of the same basic process . . . they should rise or fall together.").  By its plain terms, Claim 1 is directed to the abstract idea of matching buyers who wish to buy a service with sellers who wish to sell that service, which is the type of fundamental economic practice and basic building block of commerce that courts have repeatedly held to be abstract.  *See, e.g., OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (offer-based pricing method that used computers to set prices and match offers to sell with buyers was directed to "'fundamental economic concepts' found to be abstract ideas by the Supreme Court and [Federal Circuit]")(collecting cases); *Morsa v. Facebook, Inc.*, 77 F. Supp. 3d 1007, 1013 (C.D. Cal. 2014) ("matching consumers with a given product or service" is an abstract concept that "has been practiced as long as markets have been in operation") (quoting *Tuxis Techs, LLC v. Amazon.com, Inc.*, 2014 WL 4382446, at *5 (D. Del. Sept. 3, 2014) (apparatus and method for

"intelligent selection and proffer of products, services or information to a user or customer" was unpatentable abstract idea); *LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991, 995-96 (Fed. Cir. 2016) (unpublished) (claims for automated matching of loan offers to loan applicants held ineligible under § 101 as abstract idea); *Semantic Search Techs. LLC v. Aldo U.S., Inc.*, 425 F.Supp.3d 758, 775-777 (E.D. Tex. Aug. 21, 2019) (patent claiming "computer-aided extraction of semantics from keywords to confirm match of buyer offers to seller bids" held ineligible under § 101 as abstract idea).

The preamble to Claim 1 recites a "computer-implemented method for facilitating a services marketplace between multiple buyers and multiple sellers of services," but the claim elements themselves are not directed to any specific computer components, network infrastructure, storage techniques, or communications protocols. The claim elements focus on *transactional* aspects of the services marketplace, such as "defining a set of service classification [sic] and material terms," "registering…participants of the service marketplace;" "compiling offers to sell services and requests to buy services;" "matching the offers and the requests," "communicating to the matched participants;" and "recognizing at least one of the participants." These claim elements are directed to fundamental economic activities, not technological improvements. *See, e.g., Morsa*, 77 F. Supp. 3d at 1013 ("matching consumers with a given product or service" directed to abstract concept); *LendingTree*, 656 F. App'x at 995-96 ("That the patents in suit use a broker (i.e., a computer program on a loan-processing computer…to organize the process is of no consequence"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("that a computer receives and sends the information over a network—with no further specification—is not even arguably inventive"). In fact, the claim elements do not even recite any transaction-related improvements, as the claims describe basic functions inherent to any services marketplace, such as employment agencies, that existed long before the advent of computers and the Internet.[4] Courts frequently find

---

[4] *See Moore v. Minneapolis*, 43 Minn. 418, 418-419 (1890) (discussing "license to conduct an employment agency within the city for the procuring of employment for male persons"); *Jackson v. Long*, 289 So. 2d 205, 206 (La. Ct. App. 1974) (discussing temp agency process for matching temporary worker with customer in need of a service).

claims similar to Claim 1 to be directed to abstract ideas,[5] and this wealth of precedent is sufficient to resolve the step one inquiry here. *See, e.g., Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016) ("this court and the Supreme Court have found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases.")

The only elements of Claim 1 that arguably require technology are the elements that recite "automatically" matching offers "without human intervention" and "recognizing. . . acoustic or imagery signals collated with…one of the participants." But these claim elements are also abstract, because they are not "directed to a specific improvement" or "to a specific implementation of a solution to a problem." *24/7 Customer v. LivePerson, Inc.*, 2017 WL 2311272, at *4 (N.D. Cal. 2017) (quoting *Enfish,* 822 F.3d at 1338-39); *Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (holding that a claim failed *Alice* step one because "it claims the general concept…without offering any technological means of effecting that concept"). For example, the claims do not recite a specific database method for automatically matching offers, or specific acoustic or image recognition technology for recognizing participants. Instead, these claim elements are described in purely functional terms "directed to *a result or effect that itself is the abstract idea* and merely invokes generic process and machinery." *24/7 Customer v. LivePerson, Inc.*, 2017 WL 2311272, at *4 (quotations and citations omitted, emphasis in original); *Procter & Gamble Co. v. QuantifiCare Inc.*, 288 F.Supp. 3d 1002, 1019 (N.D. Cal. 2017) ("use of purely functional language is indicative of abstractness.").

Analysis of the specification confirms that the '575 Patent is directed to the abstract idea of

---

[5] *See* Page 6:13-28, *supra*; *see also Ghaly Devices LLC v. Humor Rainbow, Inc.*, 2020 WL 1140749, at *6-7 (S.D.N.Y Mar. 6, 2020) (claims directed at computer matchmaking algorithm); *Walker Digital, LLC v. Google, Inc.*, 66 F.Supp. 3d 501, 507-08 (D. Del. Sept. 3, 2014) (claims directed to a computer system for facilitating "an interaction whereby two parties share a series of demands with a third party, where one of the demands of both parties is that the parties' identities remain anonymous unless and until there is at least some overlap between the demands and requirements of two parties"); *Valentine Comms., LLC v. Six Continents Hotels, Inc.*, 389 F.Supp. 3d 1223, 1231 (N.D. Ga. Jan. 9, 2019) (a "virtual deal room" to match buying and selling criteria); *24/7 Customer, Inc. v. LivePerson, Inc.,* 2017 WL 2311272 at *3 (claims directed to the abstract idea of "routing a call to a customer service agent" by comparing the caller profile with customer service representative's profiles to determine match); *see also Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (collecting cases finding "claims directed to the performance of certain financial transactions as involving abstract ideas").

matching buyers and sellers in a marketplace. *E.g., 24/7 Customer v. LivePerson, Inc.*, 2017 U.S. Dist. LEXIS 81479, at \*5 (N.D. Cal. 2017) (reviewing specification in evaluating step one, citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016)). The specification identifies a long list of "purposes" that the alleged invention serves, none of which are related to improving computer systems. The purposes of the alleged invention, according to the specification, are to "foster global service transactions," to "allow a participant of the service marketplace to leverage the market forces of supply and demand," and to "provide a method for marketing to targeted customers," to name a few. '575 Patent at 2:16-3:7. Similarly, the FAC itself describes the purpose of the invention as providing a "neutral platform facilitating service transactions between purchasers and service providers to simultaneously compare multiple service proposals with multiple variables." FAC ¶23. The '575 Patent does not attempt to address any issue unique to computers; it purports to address general business and marketing concerns that have existed before the invention of the computer.

In sum, Claim 1 of the '575 Patent is directed to abstract economic activities that humans have long performed without a computer – evaluating, matching, and connecting service providers and service buyers according to their terms and classifications. Claim 1 is recited in purely functional terms, claiming high-level abstract concepts with no limitations about the technology that implements such concepts. Thus, Claim 1 is a textbook example of an abstract idea that fails *Alice* step one.

### B. Alice Step Two: the '575 Patent Lacks an Inventive Concept

The second step of the § 101 analysis requires courts "to determine whether the claim elements, when viewed individually and as an ordered combination, contain an 'inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application.'" *Smart Sys. Innovations, LLC v. Chi. Transit Auth.*, 873 F.3d 1364, 1373-74 (Fed. Cir. 2017) (quoting *Alice*, 134 S. Ct. at 2357). A claim contains an inventive concept if it "include[s] additional features" that are more than "well-understood, routine, conventional activities." *Id.* The '575 Patent contains no such features.

Claim 1 recites defining a set of parameters and terms, registering users for a service

marketplace, compiling offers and requests in terms of the parameters and terms, analyzing the identicalness of the parameters and terms in the requests and offers to determine whether there is a match, and communicating with users when a match is found. All these steps are basic marketplace functions *and* basic computer functions. "At best, the claims describe the automation of the fundamental economic concept" of matching buyers to sellers "through the use of generic-computer functions," but that is not enough to save a patent at step two. *OIP Techs.*, 788 F.3d at 1363.

### 1. The '575 Patent's Generic Computers and Conventional Computer Functions Add No Inventive Concept

Defining rules, compiling data, matching data according to the defined rules, and communicating the results of the matching are routine computer functions. *See Ghaly Devices LLC*, 2020 WL 1140749 at *8 (matchmaking algorithm implemented via ordinary computer technology failed *Alice* step two because it "does nothing more than 'collect[] information, analyz[e] it, and display[] certain results of the collection and analysis[.]'") (citing *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018)); *QuantifiCare*, 288 F.Supp. 3d at 1026-27 (steps such as "electronically analyzing," and "generating a comparison" are "routine computer functions"); *Valentine Comms.*, 389 F.Supp. 3d at 1232 (functions such as "matching," "assessing" and "receiving" information are "basic computer functionality that contains no inventive concept"). "These processes are well-understood, routine, conventional data-gathering activities that do not make the claims patent eligible." *OIP Techs.*, 788 F.3d at 1362. Plaintiff's complaint does not attempt to suggest otherwise.

Instead, the FAC emphasizes the element of Claim 1 that requires "recognizing at least one of speech, language, emotion, social intelligent, character and characteristics of at least one of the participants by analyzing acoustic or imagery signals collated with the at least one of the participants." '575 Patent, Claim 1. But analyzing visual and acoustic signals are also routine computer functions. *See Procter & Gamble*, 288 F.Supp. 3d at 1026-27 ("electronically analyzing" images is a "routine computer function[]"); '575 Patent at Col. 25:13-16 (listing existing speech recognition technologies). Moreover, Claim 1 recites the recognition step at a "high level of generality" that is "insufficient to supply an inventive concept to otherwise abstract claims."

*Morsa,* 77 F. Supp. 3d at 1016.  Claim 1 does not teach *how* the computer recognizes the visual or acoustic signals in an unconventional way, it simply recites a recognition step and says to apply it on a computer.

The specification confirms that the '575 Patent's method is merely implemented by generic and conventional computers, without any inventive features.  The specification describes that the methods are implemented by a "Retaining Engine" (RE) residing on a central server that can communicate with a number of "fully automated retaining management systems" (or ARMs).  '575 Patent, 7:37-59.  The specification does not describe the computers and network components required to build the RE or ARMs—it only describes them in functional terms.  *See e.g.* '575 Patent at 20:47-50 ("With an open architecture, the RE 100 or ARMs 200 leverages existing investment in data, analytical models, data warehousing and mining tools, and custom segmentation schemes.").

Relying on the prosecution history in which the Examiner allowed Claim 1 over certain prior art references, the FAC alleges that analyzing acoustic or imagery signals to recognize characteristics such as emotional intelligence was a "then-unconventional" computer function because, at the time of the invention, "emotional intelligence, for example, has not been subject to evaluation without personal intervention."  FAC ¶24.  Even accepting this allegation as true, it is irrelevant, because it is not tethered to the '575 Patent's claims: the recited "recognition" claim element does not require this step to be performed "without personal intervention."  "To save a patent at step two, an inventive concept must be evident *in the claims*."  *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1362 (Fed. Cir. 2017).

Claim 1 does not recite any inventive method or means for analyzing acoustic or imagery signals to automatically, without human intervention, to assess characteristics such as emotional intelligence.  *See Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04414-JST, Dkt. No. 169 at 7 (N.D. Cal. Mar. 4, 2019) (holding that a patent lacked inventiveness because the patent's alleged improvement on the prior art and the claims themselves suffer from a disconnect: the latter fail to explain "how the technology carries out the improvement") (emphasis original).  While the specification does vaguely describes processing the acoustic and visual data using pre-existing

ORRICK, HERRINGTON
& SUTCLIFFE LLP

technology, such as facial and speech recognition technology ('575 Patent at 25:13-15) and data mining (id. at 25:29-31), these passages merely establish that conventional systems were already using acoustic and visual recognition and data mining techniques before the '575 Patent was conceived. Neither the specification nor the claims describe any new or inventive computer components, architecture, or methods that improve on existing recognition technology. *See* '575 Patent at 25:3-28:27. The specification only describes, at a very high level, evaluating characteristics such as emotional intelligence using a generic computer.

Additionally, Plaintiff's reliance on the prosecution history is misplaced. The cited portion of the prosecution history comes from the Examiner's "Reasons for Allowance," which addresses how the "recognizing" element was missing from certain prior art, and that there was a lack of motivation to combine with other references for the missing element. FAC ¶25. The FAC states that "the '575 Patent and its file history make clear that each included limitation in the one independent claim, Claim 1, were not in the cited prior art, let alone well-understood, routine, and conventional," *id.* ¶30, but "prior determinations regarding obviousness and novelty have no bearing on whether the asserted claims are patent-eligible under § 101." *PlanetID, LLC v. Digify, Inc.*, Case No. 19-cv-04615-JST, Dkt. No. 30, Order Granting Motion to Dismiss (Mar. 20, 2020).

The FAC also alleges that the "automatically evaluating and matching" step "improves the functioning of the computer" because this step "provides customization information for participants in the service marketplace." FAC ¶20. However, FAC ¶ 20 does not describe a *technological* improvement to the computer– the alleged improvement is basically an economic improvement realized through targeted marketing, which is not a patent eligible concept. *See, e.g., Morsa*, 77 F. Supp. 3d at 1013 ("matching consumers with a given product or service" failed step two); *Open Text S.A. v. Alfresco Software Ltd.*, 2014 WL 4684429, at *5 (N.D. Cal. Sep. 19, 2014) (using "decades-old technology that is certainly not inventive -- to accomplish the abstract and basic marketing scheme" failed step two). Notably, if the '575 Patent's claimed matching method is performed by a human instead of a computer, an increase in efficiency would still be achieved. Therefore, this step only arguably increases the efficiency of the abstract marketing method, not the efficiency of a computer system itself.

## 2. The '575 Patent's Arrangement of Conventional Method Steps Adds No Inventive Concept

There is nothing unconventional about the method steps disclosed in the '575 Patent. Rather, the method steps have been routinely performed by humans (even without the aid of computers) in a variety of settings such as temp agencies and staffing agencies. For example, the '575 Patent's "collecting requests and offers from service buyers and providers using a set of classifications and terms;" "evaluating and matching the offers and requests based on the identicalness of classifications and terms;" and "communicating to the matched service providers and buyers that their requests or offers have been matched" elements are routine functions that staffing agencies practiced long before the '575 Patent was conceived. *See Jackson v. Long*, 289 So. 2d 205, 206 (La. Ct. App. 1974) ("Manpower operated a temporary help agency which furnished its customers with temporary labor for a fee. Upon receiving an order from a customer, Manpower contacted available personnel listed in its files and explained the nature of the employment, the length of the job, and the wages. If the worker proved to be qualified and consented to accept the assignment, Manpower told him the time and place to report and gave him a "time slip" form to present to the customer").

Even the claim element that the FAC touts as the key technological improvement—"analyzing acoustic or imagery signals of the marketplace participants to recognize their character and characteristics such as speech, language, emotion and social intelligence"—is an entirely conventional function. For one thing, this element is not limited to "analyzing acoustic or imagery signals" with a computer, so it actually reads on the fundamental practice of a human being identifying someone by seeing or hearing them. But even if this claim element were limited to analysis performed by a computer, it would still be entirely conventional. The specification itself makes clear that using computers to recognize acoustic and imagery systems was off-the-shelf technology at the time the '575 Patent was conceived, and there is nothing inventive about using such conventional technology to perform the basic function of user recognition.

1         Ultimately, the '575 Patent discloses nothing more than using generic computer

2    technology for collecting requests and offers, analyzing them using certain parameters to find a

3    match, and communicating with participants if a match results from the analysis.  The claims

4    merely set forth high level instructions to use existing computer technology to perform various

5    steps of an abstract method.  Such claims are not eligible for patent protection.  "There is, in

6    short, nothing 'inventive' about any claim details, individually or in combination, that are not

7    themselves in the realm of abstract ideas."  *SAP Am.,* 898 F.3d at 1170.

8                                         **CONCLUSION**

9         For the foregoing reasons, the FAC should be dismissed with prejudice.

10

11   Dated: May 26, 2020                                     Respectfully submitted,

12

13

14                                        By: */s/ Robert L. Uriarte*
                                                                    Robert L. Uriarte

15                                                                  ruriarte@orrick.com
                                                                    ORRICK, HERRINGTON & SUTCLIFFE

16                                                                  1000 Marsh Road
                                                                    Menlo Park, CA 94025

17                                                                  Telephone:        650 614 7400

18

19

20

21

22

23

24

25

26

27

28