Frederic M. Douglas (Bar No. 212778)
fdouglas@cox.net
15333 Culver Drive, Suite 340
Irvine, CA 92604-3051
Telephone:   (949) 293-0442
Facsimile:    (949) 203-8768

Attorney for Plaintiff
QUAD CITY PATENT, LLC

## THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

QUAD CITY PATENT, LLC, an
Illinois limited liability company,

       Plaintiff,

     vs.

ZOOSK, INC., DOES 1-10, inclusive,

    Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.: 4:20-cv-01996-JST

**PLAINTIFF QUAD CITY PATENT, LLC'S RESPONSE IN OPPOSITION TO ZOOSK, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Date: July 1, 2020
Time: 2:00 PM
Courtroom: 9
Judge: Honorable Jon S. Tigar

Initial Complaint Filed: Mar. 20, 2020
Trial Date: Not set

**Plaintiff's Response to Defendant's Motion to Dismiss - 1**

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................... 5

II.   ARGUMENT ......................................................... 6

  A.   Legal Standard ............................................... 6

    1. 35 U.S.C. §101 .............................................. 6

  B.   INSUFFICIENT EVIDENCE ....................................... 13

  C. The '575 Patent .............................................. 15

  D.   Patent Eligibility .......................................... 19

  E.   Direct Infringement ......................................... 22

    1. Defendant Literally Infringes ............................... 23

    2. Defendant Infringes Under the Doctrine of Equivalents ................... 25

  F.   Indirect Infringement ....................................... 26

III.  COURT SHOULD PERMIT PLAINTIFF LEAVE TO AMEND, IF NECESSARY ............. 26

IV. CONCLUSION ....................................................... 27

**Plaintiff's Response to Defendant's Motion to Dismiss - 2**

# TABLE OF AUTHORITIES

## Cases

*24/7 Customer, Inc. v. LivePerson, Inc.*, No. 15-CV-02897-JST, 2017 WL 2311272, at *2 (N.D. Cal., May 25, 2017) . . 7

*Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . 12

*Alice Corp. Pty v. CLS Bank Int'l, 134 S.Ct.* 2347, 2355 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . 6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2016 WL 283478, at *2 (N.D. Cal.,

Jan. 25, 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Conley v. Gibson*, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Conley v. Gibson*, 355 U.S. 41, 47 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Core Wireless Licensing S.A.R.L v. LG Elecs., Inc.*, 882 F.3d 1356, 1362 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . 7

*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fec. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Exceptional Marketing Group, Inc. v. Jones*, 749 F. Supp. 2d 1352 (N.D. Georgia 2010) . . . . . . . . . . . . . . . . . . . 14

*Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Fredrick v. U.S.*, 163 F.2d 536 (9th Cir. 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re Taco Bell Wage & Hour Actions,* No. 1:07-cv-01314-OWW-DLB, 2011 U.S. Dist. LEXIS 109169 (E.D. Cal. Sept.

26, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Plaintiff's Response to Defendant's Motion to Dismiss - 3**

*Local Intelligence, LLC v. HTC Am., Inc.*, No. 5:17-CV-06437-EJD, 2018 WL 1697127, at *6 (N.D. Cal., Apr. 6, 2018)

............................................................................ 12

*Mayo Collaborative Serv. V. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) ........................... 6

*McCoy v. U.S. Collections West, Inc.*, No. CV-14-0048-PHX-LOA, slip opinion (D. Ariz., August 11, 2014) ...... 15

*McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed.Cir. 2016) ...................... 7

Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990) ........................ 27

*Nalco Company v. Chem-Mod, LLC*, 883 F. 3d 1337, 1349 (Fed. Cir. 2018) ........................... 25

*Papasan v. Allain*, 478 U.S. 265, 286 (1986 .................................................. 10

*Petro-Hunt, L.L.C. v. U.S.*, 90 Fed.Cl. 51, 71 (Fed.Cl. 2009) ...................................... 12

*Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ......................................... 14

*Shwarz v. United States*, 234 F. 3d 428, 435 (9th Cir. 2000) ..................................... 10

*Tovar v. U.S. Postal Serv.*, 3 F.3d 1271 (9th Cir. 1993) ......................................... 14

*Webb v. County of Trinity* Case No. CIV. S-10-0012-LKK-CMK, 2010 WL 3210768 at *4 (E.D. Cal., Aug. 10, 2010) 11

**Statutes**

35 U.S.C. §101 .......................................................................... 5

35 U.S.C. §271(a) ....................................................................... 22

35 U.S.C. §282 .......................................................................... 6

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................... 11

Fed. R. Civ. P. 8(a)(2).................................................................... 9

Fed. R. Civ. P., Rule 15(a) ............................................................... 26

**Plaintiff's Response to Defendant's Motion to Dismiss - 4**

## I. INTRODUCTION

Plaintiff QUAD CITY PATENT, LLC ("Quad City" or "Plaintiff") brings this Response to Defendant's Motion to Dismiss the First Amended Complaint ("FAC") regarding infringement of Plaintiff's U.S. Patent No. 7,272,575 B2 ("the '575 Patent"), attached as Exhibit A to the Declaration of Frederic M. Douglas, filed concurrently. The claims in the '575 Patent recite inventive methods directed to non-abstract improvements in computer functionality and other innovations and are thus patent eligible under 35 U.S.C. §101. In its Motion, Defendant makes conclusory statements that the claims of the '575 Patent do not apply to "dating applications," that the claims are not patent eligible because Defendant's business is merely a dating service, such that it does not infringe on the one hand, while the '575 Patent is a dating service patent.

Defendant makes these contradictory statements by oversimplifying the claims, ignoring contravening portions of the '575 Patent, intentionally not providing evidentiary support, and arguing without sufficient evidence.

Defendant characterizes the '575 Patent as not directed to a "dating company" while at the same time an abstract idea because it was directed towards a dating company operation. Defendant failed to identify to the Court instances in the specification that argue against these assertions.

As shown below, the Defendant has not sufficiently refuted the claim of infringement, and the claims of the '575 Patent recite patent-eligible subject matter. The claims of the '575 Patent recite inventive solutions that were not well-known, routine, or conventional in the field of facilitating transactions between purchasers and service providers to simultaneously compare multiple service proposals with multiple

**Plaintiff's Response to Defendant's Motion to Dismiss - 5**

variables at the time that the '575 Patent was filed. FAC ¶23; '575 Patent, Col. 2:9-12. For the reasons detailed below, the Court should deny Defendant's Motion.

## II. ARGUMENT

A. *Legal Standard*

1. 35 U.S.C. §101

Issued patents are presumed valid. 35 U.S.C. §282. "As such, an alleged infringer asserting an invalidity defense pursuant to §101 bears the burden of proving invalidity by clear and convincing evidence." *Cave Consulting Grp., Inc. v. Truven Health Analytics Inc.*, No. 15-CV-02177-SI, 2016 WL 283478, at *2 (N.D. Cal., Jan. 25, 2016). In *Alice* and *Mayo*, the Supreme Court laid out a two-step framework for a court to assess eligibility. Step one determines whether the claims are directed to a judicial exception, such as an abstract idea. *See Alice Corp. Pty v. CLS Bank Int'l, 134 S. Ct.* 2347, 2355 (2014). If not, the claims are eligible. *Id.* at 2357. If the patent claims are found to be directed to an abstract idea, a step two is directed to determining whether the patent claims recite an "inventive concept." *Id.* at 2355. Both of these steps are informed by the specification. *See*, *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1299 (Fed. Cir. 2016).

Too broad of an interpretation of the exclusionary principle relating to laws of nature, natural phenomena, and abstract ideas "could eviscerate patent law. For all inventions at some level embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Mayo Collaborative Serv. V. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012). Therefore, an invention incorporating a law of nature or an abstract idea may be eligible for patent protection if the invention is applied to "a new and useful end." *Id.* at 72.

a. **Step 1**

At the first step, courts examine the "claimed advance' to determine whether the claims are directed to an abstract idea." *Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018). For computer-related inventions, this "often turns on whether the claims focus on the 'specific asserted improvement in computer capabilities'" or "on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* The claims are "considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1312 (Fed. Cir. 2016). An invention is not ineligible "simply because it involves an abstract concept." *24/7 Customer, Inc. v. LivePerson, Inc.*, No. 15-CV-02897-JST, 2017 WL 2311272, at *2 (N.D. Cal., May 25, 2017).

Merely because an invention is computer-related it does not prompt a conclusion that the invention is inherently abstract. *See¸ Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fec. Cir. 2016). Instead, "software-based innovations can make 'non-abstract improvements to computer technology' and be deemed patent-eligible subject matter at step 1." *Finjan*, 879 f.3d at 1304. The Federal Circuit has held that claims "focused on various improvements of systems" are eligible. *Core Wireless Licensing S.A.R.L v. LG Elecs., Inc.*, 882 F.3d 1356, 1362 (Fed. Cir. 2018) (holding that claims that "improve[d] the efficiency of using the electronic device" and improved "the speed of a user's navigation" are eligible at step 1). In *Finjan*, the Federal Circuit found that a claim "directed to a method of providing computer security by scanning a downloadable and attaching the results of that scan to the downloadable itself in the form of a 'security profile'" is eligible at step 1. *Finjan*, 879 F.3d at 1303. Although another court in the Northern District of California had previously found the same

**Plaintiff's Response to Defendant's Motion to Dismiss - 7**

claim to be directed to an abstract idea,[1] the Federal Circuit reached the opposite conclusion and held that the claim was eligible at step 1 as it is "directed to a non-abstract improvement in computer functionality, rather than the abstract idea of computer security writ large." *Id.* at 1305.

### b.   Step 2

Step two determines whether "the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018). A patent claim recites an inventive concept "when the claim limitations 'involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry.'" *Id.* Whether an element or combination of elements "is well-understood, routine and conventional to a skilled artisan in the relevant field is a question of fact" that "must be proven by clear and convincing evidence." *Id.* at 1368. This inquiry "goes beyond what was simply known in the prior art" and "]t]he mere fact that something is disclosed in a piece of prior art . . . does not mean it was a well-understood, routine, and conventional." *Id.* at 1369.

Recognizing that *Berkheimer* informs regarding the step 2 inquiry, the United States Patent and Trademark Office ("USPTO") provided guidance instructing examiners to "conclude that an element (or combination of elements) represents well-understood, routine, conventional activity *only* when the examiner can readily conclude that the element(s) is *widely prevalent or in common use in the relevant industry*. USPTO Manual of Patent Examining Procedure (MPEP), Chapter 2100,

---

[1]

Section 2106.05(d)(I)(2), available at

https://www.uspto.gov/web/offices/pac/mpep/s2106.html (emphasis supplied).

That conclusion must be based on a citation to statements in the specification or prosecution history, court decisions, or publications that demonstrate "the well-understood, routine, conventional nature of the additional elements," or a statement that the examiner is taking official notice of the same *Memorandum*, USPTO, April 19, 2018, III, A, "Formulating Rejections, available at

https://www.uspto.gov/sites/default/files/documents/memo-berkheimer-20180419.PDF.

2.    Fed. R. Civ. P. 12(b)(6)

The Supreme Court articulated the legal requirements for evaluating a motion to dismiss under Rule 12(b)(6), FED. R. CIV. PROC., in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007):

"[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."

To survive a 12(b)(6) motion, a complaint must meet the requirements of Fed. R. Civ. P. 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Also, a complaint must contain sufficient factual matter, which, if accepted as true, states a

claim to relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a motion to dismiss under Fed. R. Civ. P 12(b)(6), the Court must construe the facts alleged in the FAC in the light most favorable to the drafter of the FAC and the Court must accept all well-pleaded factual allegations as true. *See, Shwarz v. United States*, 234 F. 3d 428, 435 (9th Cir. 2000). Nonetheless, the Court does not need to accept as true a legal conclusion couched as a factual allegation. *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Ninth Circuit provides for pleading standards based on *Twombly* and *Iqbal*, in *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The Ninth Circuit recited a two-step process:

> "First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Levitt v. Yelp! Inc.*, 765 F.3d at 1135.

**Plaintiff's Response to Defendant's Motion to Dismiss - 10**

Despite *Twombly*, when examining a complaint as to whether it is legally sufficient under Rule 12(b)(6), all material allegations of the complaint are to be taken as true and are construed in the light most favorable to the nonmoving party. A "well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556, 127 S. Ct., at 1965. "In reviewing the sufficiency of a complaint, '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). In the pleading stage, the question is not whether Plaintiff can prove his allegations or the possible difficulties in making such proof. *Id.* ("[I]t may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."). "Plausibility" does not refer to the likelihood that a pleader will succeed in proving the complaint's allegations. *Webb v. County of Trinity* Case No. CIV. S-10-0012-LKK-CMK, 2010 WL 3210768 at *4 (E.D. Cal., Aug. 10, 2010).

Courts have repeatedly held that *Twombly* and *Iqbal* did not modify the notice pleading standard. *Hamilton v. Palm*, 621 F.3d 816, 817 (8th Cir. 2010) ("*Twombly* and *Iqbal* did not abrogate the notice pleading standard of Rule 8(a)(2). Rather, those decisions confirmed that Rule 8(a)(2) is satisfied 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

**Plaintiff's Response to Defendant's Motion to Dismiss - 11**

liable for the misconduct alleged.'") (quoting *Iqbal*, 556 U.S. at 678). The Federal

Court of Claims also stated, "The Supreme Court in [*Twombly*] (and … *Iqbal*) made

clear that it intended neither to defenestrate the notice pleading rules that have reigned

under *Conley v. Gibson*, 355 U.S. 41, 45, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957), nor,

correspondingly, to collapse discovery, summary judgment and trial into the pleading

stages of a case." *Petro-Hunt, L.L.C. v. U.S.*, 90 Fed.cl. 51, 71 (Fed. Cl. 2009).

Motions to dismiss for failure to state a claim are rarely granted. *Gilligan*, 108

F.3d at 249 (stating that there is "a powerful presumption against rejecting pleadings

for failure to state a claim . . . and a motion to dismiss for failure to state a claim is

viewed with disfavor and is rarely granted.").

The Federal Circuit confirmed that eligibility may be determined at the 12(b)(6)

stage "only when there are no factual allegations that, taken as true, prevent resolving

the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades

Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018). Therefore, "it is improper to

decide at the pleadings or summary judgment stage that claims lack an inventive

concept where factual disputes remain as to whether particular elements are "well-

understood, routine, [and/or] conventional." *Local Intelligence, LLC v. HTC Am., Inc.*,

No. 5:17-CV-06437-EJD, 2018 WL 1697127, at *6 (N.D. Cal., Apr. 6, 2018).

**Plaintiff's Response to Defendant's Motion to Dismiss - 12**

In the instant case, the facts pleaded in the First Amended Complaint ("FAC", Dkt. No. 16), taken as true as they must be for purposes of a Rule 12(b)(6) motion, overwhelmingly state a claim for relief.

## B. *INSUFFICIENT EVIDENCE*

Defendant denies that the Zoosk platforms serve as a "service marketplace" but failed to submit any evidence, by way of documents or affidavits, other than an unsupported denial, despite the specification of the '575 Patent providing guidance on the term "service marketplace." Defendant takes issue with the construction of the term "services" relating to the UNSPC and the SIC systems of classifications but provided no evidence from those services to support its bare allegations. Motion, Dkt. 17, p. 10, internal page 4, lines 22-28. As shown below, there is a likely reason why Defendant provided no such evidence.

Defendant failed to produce any evidence, besides argument, as to the construction of terms "service providers," "purchasing services," "transactions of services," "defining," "compiling offers," and other terms. As explained below in reference to the specification of the '575 Patent, a plain, ordinary meaning viewpoint is not appropriate here as the specification uses the terms in other aspects not immediately recognizable as the plain, ordinary meaning.

Defendants failed to provide proper evidence in its Motion and cannot bring that missing evidence for the first time via reply. *See*, *e.g.*, *Exceptional Marketing Group,*

*Inc. v. Jones*, 749 F. Supp. 2d 1352, 1360 (N.D. Georgia 2010) ("If the declarations filed with the Motion to Dismiss were insufficient, the Defendants may not later file reply declarations as a supplement or substitute. *See Tishcon*, 2005 WL 6038743, at *8 (striking reply declarations 'intended to replace inadequate evidentiary submissions offered in support of the plaintiff's two motions for partial summary judgment.'". For this reason, the Court will not consider the declarations filed with the Defendants' Reply Brief.").

It would be unfair to consider evidence presented in Defendants' reply without giving Plaintiff an opportunity to respond. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996), *See*, *Fredrick v. U.S.*, 163 F.2d 536, 549 (9th Cir. 1947) ("New material does not belong in a reply brief. Its introduction violates the spirit if not the letter of our Rule 22, which provides that, in oral arguments, 'a fair opening of the case shall be made by the party having the opening and closing argument.' Certainly the use of new material in a reply brief transgresses against the canons of fair forensics."); *Tovar v. U.S. Postal Serv.*, 3 F.3d 1271, 1273 n. 3 (9th Cir. 1993)(striking new evidence presented in a reply brief after the defendant argued that "the new information was outside the record and that including it in a reply brief deprived the [defendant] of an opportunity to respond"); *In re Taco Bell Wage & Hour Actions*, No. 1:07-cv-01314-OWW-DLB, 2011 U.S. Dist. LEXIS 109169, at *19 (E.D. Cal. Sept. 26, 2011) ("New evidence or analysis presented for the first time in a reply will not be considered.")

(citations omitted). *See*, *McCoy v. U.S. Collections West, Inc.*, No. CV-14-0048-PHX-LOA, slip opinion, p. 6 (D. Ariz., August 11, 2014) ("Here, Defendant Darnell's introduction of new evidence via his affidavit attached to his Reply leaves Plaintiffs without an adequate opportunity to respond. (Doc. 221) Darnell has not requested leave of the Court to file an untimely affidavit or provided any reason why he could not have raised the new information contained in his affidavit at an earlier time. Thus, the Court will strike Defendant Darnell's affidavit attached to the Reply and will not consider the new evidence raised in his reply brief and affidavit in ruling on the pending motion."). See also, *Contreras v. American Family Mutual Ins. Co.*, 135 F. Supp. 3d 1208, FN 1 (D. Nev. 2015) ("As this evidence was introduced for the first time in a reply brief, the Court declines to consider it." (citing *Provenz v. Miller,* 102 F.3d 1478, 1483 (9th Cir.1996).

### C. The '575 Patent

In their most basic form, and ignoring many claim limitations, the claims of the '575 Patent are directed to a computer-implemented method for facilitating a services marketplace between multiple buyers and sellers of services defining a set of service classifications and material terms registering a plurality of participants of the service marketplace, compiling offers to sell services and request to buy services provided by said participants, wherein the offers and the requests are described in said set of service classification and material terms; automatically evaluating and matching the offers and

the requests, without human intervention, based upon the degree of identicalness of said set of service classification and material terms recited in the offers and the requests; communicating to matched participants of the result generated by the evaluating and matching step; the offers being unknown to service buyers and requests being unknown to service sellers prior to the communicating step; and recognizing at least one of speech, language, emotion, social intelligent, character and characteristics of at least one of the participants by analyzing acoustic or imagery signals collated with the at least one of the participants. The claims provide technical solutions to technical problems, and, thus, are patent-eligible. FAC ¶ 19.

From the steps of evaluating and matching the offers and the requests, without human intervention, based upon the degree of identicalness of said set of service classification and material terms recited in the offers and the requests; communicating to matched participants of the result generated by the evaluating and matching step; the method provides customization information for participants in the service marketplace as not provided for in prior existing technology, thus reciting statutory subject matter. Without this step, any number of participants in the services marketplace may be specified for a proposal, and customization information would be sent to all of the participants, causing a computer system that processed the information to operate less efficiently than the patented invention. The method of independent claim 1 improves the functioning of the computer. FAC ¶ 20. Thus, the inventor of independent claim 1

did not merely "computerize" an existing technology but invented something that could not be performed with then-existing technology and improved functioning of a computer system itself.

As the '575 Patent states, one cannot merely slap on a label, "dating-as-a-service" (See, Motion, Dkt. No. 17, p. 10, internal p. 4, line 22), to understand the limits or applicability of the invention, but the designation of roles of participants in the "service marketplace" depends "on each service transaction rather than a fixed label to a participant." Col. 4, lines 5-6 of the '575 Patent. FAC ¶ 22.

As the '575 Patent additionally states, at the time of invention, there was no neutral platform facilitating service transactions between purchasers and service providers to simultaneously compare multiple service proposals with multiple variables. Col. 2:9-12. FAC ¶ 23.

During the prosecution of the '575 Patent, the Examiner indicated that independent claim 1 was patentable over the cited prior art at least due to a lack of the cited prior art's disclosure of the acoustic or imagery element contained in independent claim 1. Specifically, on September 13, 2017, the Examiner's "Reasons for Allowance" stated in relevant part:

"The sole independent claim in this application is claim 1. The primary reference Dangat et al (US 6041267) discloses as previously discussed. Dangat however does not teach recognizing at least one of speech, language, emotion, social intelligence, character, and

**Plaintiff's Response to Defendant's Motion to Dismiss - 17**

characteristics of at least one of the participants by analyzing acoustic or imagery signals collated with the at least one of the participants. Moreover, the missing claimed elements from Dangat are not found in a reasonable number of reference(s). Yet even if the missing claimed elements were found in a reasonable number of references, a person of ordinary skill in the art at the time of the invention was made would *not* have been motivated to include these missing elements in an embodiment in the Smith disclosure because generally, emotional intelligence, for example, has not been subject to evaluation without personal intervention.  For these reasons, independent claim 1 and its dependent claims 2-8, 10-58, and 76 are deemed allowable." (emphasis in original, claim number in original). FAC ¶ 25.

The elements of independent claim 1 go beyond any abstract idea. For example, the last stated element in claim 1 provides more than enough subject matter to beyond claiming an abstract idea, actively recognizing one of speech, language, emotion, social intelligent, character, and so on regarding participants by analyzing acoustic or imagery signals that are collated with the participants. The "analyzing" is not merely a law of nature, natural phenomenon, or abstract idea. FAC ¶ 26.

None of the elements of independent claim 1 merely involve process steps that can be practiced mentally. As the Examiner stated in a May 9, 2007 Notice of Allowability, "emotional intelligence, for example, has not been subject to evaluation without personal intervention." Thus, the Examiner

considered the issued claims to require active involvement beyond mere mental activity. FAC ¶ 26. Defendant takes issue with this factual characterization but provided no evidence to the contrary as to how to construe the term, "evaluation without personal intervention."

Furthermore, claim 7, dependent upon independent claim 1, further comprises a step of data-mining the offers and the requests to discover at least one transactional attribute of one, a portion, or all of the participants. FAC ¶ 29.

The '575 Patent and its file history make clear that each included limitation in the one independent claim, claim 1, were not in the cited prior art, let alone well-understood, routine, and conventional. Also, the dependent claims, claims 2-58, include further limitations that were not in the cited prior art, let alone well-understood, routine, and conventional. *See, e.g.,* limitations of claims 2-58 of the '575 Patent.

D.    *Patent Eligibility*

The Defendant claims that a "dating-as-a-service" invention is not patentably eligible. See, Motion, Dkt. No. 17, p. 10, internal p. 4, line 22. As explained above, the '575 Patent is not amenable to arbitrarily labels to decide the scope or eligibility of the claims.

The Examiner had already rejected some claims during prosecution of the '575 Patent based on § 101. These rejections, which were overcome by amending the

claims. Thus, it should be understood that the Examiner did consider § 101 issues as to the prosecuted claims." FAC ¶28.

Defendant alleges that claims that recite "abstract ideas that use computers as tools" fail *Alice* step one. Motion, Dkt. No. 17, p. 14, internal p. 8, lines 11-13.

However, the '575 Patent provides an improvement in computers as tools, not abstract ideas that use computers as tools. See, *Trading Techs. Int'l, Inc. v. COG, Inc.*, 675 F. App'x 1001, 1005 (Fed. Cir. 2017) (an application or computer-implemented function that improves the capability of the system, will overcome or avoid abstraction).

One of the stated "purposes" of the inventions in the '575 Patent is to "provide an integrated management tool to ***shorten transaction and fulfillment cycles***." Col. 2, lines 29-31 (emphasis supplied). Another stated "purpose" is "to mine customer data not previously available." Col. 2, 40-42. The methods are faster than the prior art, such as stated in another "purpose," stated as "to reduce manual analysis and data consolidation." Col. 2, 48-49. Another "purpose" is stated as "to improve the communication and interaction in the service marketplace." Col. 3, lines 1-2.

The inventions in the '575 Patent further operate as innovations over the then known technology by applying computer hardware to accomplish improved operation. See, '575 Patent, Col. 8, lines 4-7 ("Thus, according to a feature of the present invention, the proprietary information is securely stored by each ARMS server, to prevent one SP from accessing, obtaining or altering the proprietary information of

**Plaintiff's Response to Defendant's Motion to Dismiss - 20**

another SP."). At Col. 16, lines 31-67, the '575 Patent details how the inventions improve analysis and increases efficiency. See, for example, Col. 16, lines 62-67 ("Since the transactional information collected by the RE 100 is well defined by the services classification and material terms of the present invention, the RE 100 or the ARMS 200 can *analyze and summarize more effectively* for interested consumer attributes or patterns of the service marketplace.") (emphasis supplied). See also, '575 Patent, Col. 18, lines 10-19; 33-52 (stating that inventive method is not only faster, but better than ordinarily performed); Col. 19, lines 53-63 (improves process); Col. 20, lines 14-27 (benefit for service providers, like Zoosk); Col. 20, lines 51-62 ("strategic optimization, looking at long-term behavior"); Col. 21, lines 10-16; Col. 21, lines 61-66 (speeds up computer system processing); Col. 24, lines 31-42; and Col. 25, lines 23-46 (algorithms and other elements not conventional).

The inventions in the '575 Patent operate to be patent-eligible as the inventive methods facilitate the process in a way that a human being making calculations could not. *Bancorp Servs., LLC v. Sun Life Assur. Co. of Canada (U.S.), 687 F. 3d 1266, 1278 (Fed. Cir. 2012)* ("[t]o salvage an otherwise patent-ineligible process, a computer must be integral to the claimed invention, facilitating the process in a way that a person making calculations and computations could not.").

At any rate, any questions of fact should be resolved at a later date, not via a motion to dismiss.

**Plaintiff's Response to Defendant's Motion to Dismiss - 21**

*E.    Direct Infringement*

Plaintiff pleads direct infringement sufficiently to withstand Defendant's motion to dismiss. The FAC identifies the accused instrumentalities as the website Zoosk.com, apps, platforms, integration, cooperation, and engagement among its associates, vendors, users, and social media (FAC at ¶¶ 12-17, and 40). Infringement of a patent encompasses acts to "make, use, offer to sell" the accused instrumentalities. 35 U.S.C. §271(a). The FAC alleges that " Defendants have directly infringed and continue to directly infringe the '575 Patent by making or having made, using, designing, advertising, making available for the use of others, offering to sell, or selling in the United States and in this District, or by importing into the United States, without authorization of Plaintiff, products and services that employ and embody the inventions of the '575 Patent." (FAC at ¶ 11).

Defendant has not denied offering the apps on its portals or websites. Thus, the issue is whether all claimed elements of the claims of the '575 Patent are performed by Defendant in the claimed instrumentalities and whether the provision of the apps and other services use "recognizing at least one of speech, language, emotion, social intelligent, character and characteristics of at least one of the participants by analyzing acoustic or imagery signals collated with the at least one of the participants." '575 Patent, Col. 29, lines 56-60.

1. Defendant Literally Infringes

As shown above, the last limitation in Claim 1 relates to analyzing acoustic or imagery signals and recognizing speech, language, emotion, social intelligent, character, and/or characteristics of participants. The claim unambiguously does not require the service marketplace to be a dating service, but does not exclude an alleged dating service to practice Claim 1.

As discussed above, Defendant asserts that the '575 Patent does not cover "dating-as-a-service," while characterizing the '575 Patent as not eligible as it applies to a dating service only. Defendant failed to bring to the Court's attention that the '575 Patent is quite expansive as to what it contemplates as being a "service marketplace." For a pertinent example, the "considerations" contemplated in the transactions between "buyers" and "sellers" include various forms, including "even love and affection." '575 Patent, Col. 4, lines 35-40. Certainly, this contemplates transactions, such as the ones Zoosk facilitates. This clear indication alone should stop Defendant's arguments against "plausible infringement" of "dating-as-a-service."

Looking more broadly, the specification of the '575 Patent elaborates on the proper claim constructions for relevant terms, contrary to the informal claim constructions Defendant inserted into its motion without citing the following relevant specification statements. One embodiment of the inventions in the '575 Patent involves

"transacting services *driven by* purchasers or by *service providers*." '575 Patent, Abstract (emphasis supplied). See also, Col. 1, lines 7-12.

The '575 Patent provides for methods to "freely trade services as goods, stocks or commodities." Col. 1, line 26. "Services" is described to include, not exclude, "any act of assistance or benefit to other(s), such as the services classified according to the Universal Standard Products and Services Classification (UNSPSC) Code, the U.S. Standard Industrial Classification (SIC) system or the like." Col. 3, lines 51-55.

Defendant claims that the "dating-as-a-service" is "foreclosed" by this portion of the specification. Motion, Dkt. No. 17, p. 10, internal p. 4, line 22. With no evidence as to whether a "dating service" may be found in those two classifications, "or the like." As shown in Exhibit B to the Declaration of Frederic M. Douglas, filed concurrently, both of these classification systems indeed do include "dating" operations. The UNSPSC database was accessed at https://www.unspsc.org/search-code on June 8, 2020 and the SIC database was accessed at https://www.osha.gov/pls/imis/sicsearch.html on June 8, 2020.

"'Service marketplace'" includes any tangible or intangible place where services are offered for sale or transacted." '575 Patent, Col. 3, lines 56-57. Note that this definition is not limiting, but only "includes" the stated options.

"Transactions of services'" includes exchanges for services with any form of consideration, and exchanges services for services." '575 Patent, Col. 4, lines 32-34.

**Plaintiff's Response to Defendant's Motion to Dismiss - 24**

"'Considerations' include any benefit to promisee or a third person, or any detriment sustained by a promiser. Considerations may be in a form of money, goods, real estate, intellectual property (via assignment or license), services, *or even love and affection*." '575 Patent, Col. 4, lines 35-39 (emphasis supplied).

Defendant argues based on the plain and ordinary meanings of these above-mentioned terms, which contradict the '575 Patent specification. Dkt. 17, p. 14, internal p. 8, line 19  ("By its plain terms"). This statement demonstrates that the motion to dismiss is an attempt to solicit a premature and overly limiting construction of the scope of claim 1. Defendant points to statements in the prosecution history to attempt to support its premature claim construction, but Defendant avoids mentioning the context of such statements or other statements that contradict their effort to construe the limitations of the patent claims.

Defendant's motion to dismiss for non-infringement "boil[s] down to objections to [Plaintiff's] proposed claim construction[], a dispute not suitable for resolution on a motion to dismiss." *Nalco Company v. Chem-Mod, LLC*, 883 F. 3d 1337, 1349 (Fed. Cir. 2018).

2. Defendant Infringes Under the Doctrine of Equivalents

The FAC further alleges infringement under the Doctrine of Equivalents. Even if the Court adopts Defendant's artificially narrow claim construction, Defendant still infringes under the Doctrine of Equivalents because

**Plaintiff's Response to Defendant's Motion to Dismiss - 25**

Zoosk's systems operate to perform the same function claimed in substantially the same way to obtain the same result that falls squarely within an equivalent of Claim 1. FAC ¶¶ 18, 37.

### F.   Indirect Infringement

As discussed above, the FAC alleges that Zoosk cooperates and controls others to infringe the '575 Patent through integration, cooperation, and engagement among its associates, vendors, users, and social media (FAC at ¶¶ 12-17, and 40). However, Defendant does not properly submit the entire terms of service as admissible evidence to support its Motion to Dismiss. Furthermore, Defendant's legal notices, terms of service, privacy policy, and other notices on the Zoosk.com website which it controls expressly provides for "services" and "sales" along with digital currency, which would argue away from its non-infringement arguments in its Motion to Dismiss. https://docviewer.zoosk.com/legal-tos-en.html; https://docviewer.zoosk.com/legal-privacy-en.html.

## III.   COURT SHOULD PERMIT PLAINTIFF LEAVE TO AMEND, IF NECESSARY

Even where a party has amended his Complaint once or a responsive pleading has been served, the Federal Rules provide that leave to amend should be "freely given when justice so requires." Fed. R. Civ. P., Rule 15(a). The Ninth Circuit requires that

**Plaintiff's Response to Defendant's Motion to Dismiss - 26**

this policy favoring amendment be applied with "extreme liberality." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)."

Here, Plaintiff is willing to file a Second Amended Complaint if necessary, after a conference with Defendants' counsel. Plaintiff is confident that any alleged deficiencies in the First Amended Complaint are capable of being cured by amendment and that Plaintiff should then be granted leave to amend, to provide Defendant with the particularity that they desire, once Plaintiff clearly understands the deficiencies they allege.

**IV. CONCLUSION**

Plaintiff's allegations regarding the technology encompassed by the claims must be accepted as true, with all reasonable inferences drawn in favor of Plaintiff, for purposes of Defendant's Motion to Dismiss. As such, prevailing law plainly provides that the issues of patent eligibility, claim construction, and non-infringement should not be resolved in the contest of Defendant's Rule 12(b)(6) motion. For these reasons, and the reasons above, Plaintiff respectfully submits that the Court should deny Defendant's Motion to Dismiss.

June 9, 2020                              Respectfully submitted,


                                         __/s/ Frederic M. Douglas_____
                                         Frederic M. Douglas


**Plaintiff's Response to Defendant's Motion to Dismiss - 27**

## **Certificate of Service**

I hereby certify that on June 9, 2020, I filed the foregoing documents

**PLAINTIFF QUAD CITY PATENT, LLC'S RESPONSE IN OPPOSITION TO
ZOOSK, INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED
COMPLAINT**

electronically in compliance with Local Rules, constituting electronic service upon

counsel of record that have consented to electronic service. All other counsel of

record or pro se parties were served with a true and correct copy of the foregoing by

email, U.S. mail, or facsimile transmission, on this the 9th day of June 2020.

/s/ Frederic M. Douglas

**Plaintiff's Response to Defendant's Motion to Dismiss - 28**