ROBERT L. URIARTE (SBN 258274)
ruriarte@orrick.com
LI SHEN (SBN 307896)
lshen@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone:   650 614 7400

Attorneys for Defendant
ZOOSK, INC.

IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| QUAD CITY PATENT, LLC, | Case No. 4:20-cv-01996-JST |
| Plaintiff, | **ZOOSK'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| ZOOSK, INC., | Judge: Hon. Jon S. Tigar<br>Date:  July 1, 2020 |
| Defendant. | Time: 2:00 p.m.<br>Courtroom: 6 |

# TABLE OF CONTENTS

**Page No**.

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 2

I.  Plaintiff Cannot allege a plausible infringement theory ....................................... 2
    A.  Plaintiff Cannot Plausibly Allege that Zoosk Directly Infringes ............................ 2
    B.  Plaintiff Cannot Plausibly Allege that Zoosk Indirectly Infringes .......................... 5

II. The '575 Patent claims ineligible subject matter under §101 ............................................. 6
    A.  Alice Step One: the '575 Patent is Directed to the Fundamental Economic Practice of Matching Buyers and Sellers .................................................................. 6
        1.  The '575 Patent is Not Directed to an Improvement in Computers............ 7
        2.  The Purposes of the '575 Patent Are Not Related to Technical Problems .................................................................................................... 9
    B.  Alice Step Two: the '575 Patent Lacks an Inventive Concept.............................. 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ............................................................................................. 1, 6, 8, 9

*Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.)*,
    687 F.3d 1266 (Fed. Cir. 2012) ............................................................................................. 11

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
    859 F.3d 1352 (Fed. Cir. 2017) ............................................................................................. 10

*Customedia Techs., LLC v. Dish Network Corp.*,
    951 F.3d 1359 (Fed. Cir. Mar. 6, 2020) ............................................................................................. 7

*CyberSource Corp. v. Retail Decisions, Inc.*,
    654 F.3d 1366 (Fed. Cir. 2011) ............................................................................................. 7

*Diamond v. Diehr*,
    450 U.S. 175 (1981) ............................................................................................. 8

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ............................................................................................. 8

*Fitbit Inc. v. AliphCom*,
    2017 WL 819235 (N.D. Cal. Mar. 2, 2017) ............................................................................................. 6, 8

*FuzzySharp Techs. Inc. v. Nvidia Corp.*,
    2013 WL 2249707 (N.D. Cal. Apr. 18, 2013) ............................................................................................. 5

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017) ............................................................................................. 9

*Intellectual Ventures I LLC v. Symantec Corp.*,
    838 F.3d 1307 (Fed. Cir. 2016) ............................................................................................. 10

*LendingTree, LLC v. Zillow, Inc.*,
    656 F. App'x 991 ............................................................................................. 7

*Moody v. Morris*,
    608 F.Supp.2d 575 (S.D.N.Y. Apr. 13, 2009) ............................................................................................. 5

*Morsa v. Facebook, Inc.*,
    77 F. Supp. 3d 1007 (C.D. Cal. 2014) ............................................................................................. 6

*Nalco Co. v. Chem-Mod, LLC*,
    883 F.3d 1337 (Fed. Cir. 2018) ............................................................................................. 5

ii    ZOOSK'S REPLY RE: MOTION TO DISMISS FAC
CASE NO. 4:20-CV-01996-JST

ORRICK, HERRINGTON &
SUTCLIFFE LLP

*OIP Techs., Inc. v. Amazon.com, Inc.*,
    788 F.3d 1359 (Fed. Cir. 2015) ................................................................................................ 6

*Ottah v. Fiat Chrysler*,
    884 F.3d 1135 (Fed. Cir. 2018) ............................................................................................ 4, 5

*PlanetID, LLC v. Digify, Inc.*,
    Case No. 19-cv-04615-JST, Dkt. No. 30, Order Granting Motion to Dismiss
    (Mar. 20, 2020) ...................................................................................................................... 10

*Procter & Gamble Co. v. QuantifiCare Inc.*,
    288 F.Supp. 3d 1002 (N.D. Cal. 2017) ................................................................................. 10

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) .............................................................................................. 8

*Symantec Corp. v. Zscaler, Inc.*,
    No. 17-cv-04414-JST, Dkt. No. 169 (N.D. Cal. Mar. 4, 2019) ............................................. 10

*Walker Digital, LLC v. Google, Inc.*,
    66 F.Supp.3d 501 (D. Del. Sept. 3, 2014) ............................................................................... 9

**Statutes**

35 U.S.C. § 101 .................................................................................................................. 6, 7, 8, 10

**Other Authorities**

Rule 11 ............................................................................................................................................ 4

Rule 12(b)(6) .................................................................................................................................. 1

U.S. Patent No. 7,272,575 ..................................................................................................... *passim*

**INTRODUCTION**

Try as Plaintiff might to prop up its patent and somehow tie its claims to Zoosk's dating applications, Plaintiff's Opposition brief confirms that there is no plausible read on U.S. Patent No. 7,272,575 ("the '575 Patent") that suggests a claim for relief against Zoosk. Plaintiff consistently ignores Zoosk's arguments and case law while attempting to misdirect with frivolous arguments, such as the argument that Zoosk failed to put forward sufficient "evidence" to support a Rule 12(b)(6) motion. Dkt. 21 ("Opp.") at 13-15. Plaintiff has now had three chances—twice in its complaints and once in its Opposition—to bring forth facts suggesting that Zoosk infringes any patent-eligible claim of the '575 Patent. Plaintiff has failed each time, and thus dismissal with prejudice is now warranted for two principle reasons. First, Plaintiff is unable to articulate any plausible infringement theory. The section of Plaintiff's Opposition discussing direct infringement does not contain any analysis of the First Amended Complaint's ("FAC") factual allegations and does not explain how Zoosk's accused applications or websites infringe. Opp. at 23-25. Instead, Plaintiff merely makes claim construction arguments for a few asserted claim elements, without connecting the dots between any of these claim construction positions and the FAC's allegations about what Zoosk's accused applications do. With respect to indirect infringement, Plaintiff does not explain how Zoosk's users infringe, much less how Zoosk induces its users to infringe.

Second, the '575 Patent claims ineligible subject matter under *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 219 (2014). At step one, the '575 Patent is directed toward a patent-ineligible abstract idea of a marketplace that matches up buyers and sellers. Plaintiff does not argue otherwise; its only response to Zoosk's step one argument is a cut-and-paste of the FAC's allegation about what the Patent purportedly is "directed to." Opp. at 15. The Court need not credit Plaintiff's bald legal conclusion, which is unsupported by the claims or the specification. At step two, Plaintiff fails to identify any inventive concept. Plaintiff simply argues that the '575 Patent is eligible because it was allowed by the examiner, and because the claimed invention purportedly solves *business* problems by creating a faster, more customizable transaction system. But neither of these arguments has any bearing on patent-eligibility. There is nothing *technologically* innovative or unconventional about the '575 Patent, as its generic claims make clear.

# ARGUMENT

## I. PLAINTIFF CANNOT ALLEGE A PLAUSIBLE INFRINGEMENT THEORY

### A. Plaintiff Cannot Plausibly Allege that Zoosk Directly Infringes

Plaintiff has yet to articulate a coherent infringement theory that describes how Zoosk directly infringes the '575 Patent. In Plaintiff's first attempt, it filed a complaint completely devoid of anything but threadbare legal conclusions. Dkt. 1 at 4-6. In its FAC, Plaintiff added a claim chart, but this claim chart merely provides an inconsistent and incoherent collection of screenshots that does not provide fair notice of what Plaintiff's theory is. It is apparent that Plaintiff cannot credibly allege that Zoosk's dating apps infringe the '575 Patent, and Plaintiff's frivolous claims should therefore be dismissed with prejudice.

Asserted claim 1 of the '575 Patent claims "a **services marketplace** between **multiple buyers and sellers** of **services**" comprising:

> **defining** a set of **service classification** and **material terms**;
>
> registering a plurality of participants of the service marketplace;
>
> compiling **offers to sell services** and **requests to buy services** provided by said participants, wherein the offers and the requests are described…
>
> **automatically evaluating** and matching the offers and the requests, without human intervention, based on the degree of identicalness of said set of service classification and material terms;
>
> communicating to matched participants of the result…
>
> …and **recognizing at least one** of each, language, emotion, social intelligent, character and characteristics of at least one of the participants by analyzing acoustic or imagery signals collated with the at least one of the participants.

'575 Patent, Claim 1 (emphasis added). As discussed in Zoosk's Motion to Dismiss (Dkt. 17 at 4-6), the FAC's infringement allegations are unclear, but hint at two mutually exclusive infringement theories. Under the first theory, Zoosk applications themselves are services marketplaces, and Zoosk users who are looking for dates are "buyers and sellers" making "offers to sell services and requests to buy services" within Zoosk's applications. *See* FAC ¶ 40(a); FAC ¶ 40 (d) & (e); FAC ¶ 16 (allegation that Zoosk's applications "permit buyers, sellers, and users" to "make purchases from…other users"). Under a second infringement theory suggested by the FAC, the "services

1  marketplace" is an applications marketplace (i.e., an app store), app users are buyers, and Zoosk is
2  a seller of services. *See* FAC ¶ 15; FAC ¶ 14.  Plaintiff's Opposition does not embrace either theory,
3  nor does the Opposition articulate any other coherent theory of infringement, leaving Zoosk and
4  the Court to guess on fundamental questions.

5  What is the "services marketplace" at issue?  Who are the "buyers" and "sellers"? What
6  "services" are being offered and sold? What are the "services classifications" and "material terms,"
7  and who is "defining" them? Who or what is "recognizing at least one" of the criteria discussed in
8  the last clause of Claim 1?  That neither the FAC nor Plaintiff's Opposition provides answers to
9  these questions confirms that there is no set of facts Plaintiff can allege to plausibly suggest
10 infringement by Zoosk under any theory.  Plaintiff's inability to articulate a plausible theory is not
11 surprising given the facial disconnect between a patent covering "buyers" and "sellers" of services
12 and a dating application.  In short, the FAC does not suggest any plausible direct infringement
13 theories that are applicable to Zoosk.[1]

14 Plaintiff's Opposition argues that the '575 Patent is expansive enough to cover
15 "transactions" involving "dating-as-a-service" because the '575 Patent's specification mentions
16 "love and affection" as potential "considerations" given in exchange for a service. Opp. at 23. As
17 an initial matter, this argument is divorced from the text of the claims, as well as the facts of this
18 case. "Consideration" is not required by any element of Claim 1, nor does the FAC link the concept
19 of "consideration" to anything that Zoosk allegedly performs.  Additionally, while the '575 Patent
20 notes that "love and affection" can be consideration (Col. 4:35-40), that is a far cry from saying
21 that the patent teaches classifying the act of agreeing to go on a date as "selling" a "service" in
22 exchange for "love and affection."  Agreeing to a date cannot be considered a transactional
23 "service" under any definition relevant here, unless Plaintiff is truly alleging that claims directed
24 to a "method for facilitating a services marketplace between multiple buyers and sellers of services"
25 covers a scenario in which singles "buy" love with love. Such a theory is so inherently implausible

---

[1] Plaintiff also asserts that Zoosk infringes under the Doctrine of Equivalents. Opp. at 25-26. However, Plaintiff supports this argument entirely with conclusory statements, and it does not provide any analysis as to how or why Zoosk's products would perform the same function in substantially the same way as Claim 1 of the '575 Patent.

that it begs for dismissal with prejudice at the pleading stage. *See Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir. 2018) (rejecting clearly implausible infringement theory out of hand at the pleading phase).

Plaintiff makes much of the fact that the UNSPSC Code and the SIC system, which are mentioned in the '575 Patent's specification, recognize "dating services" as a category of commercial services. Opp. at 23-24. That fact is irrelevant for two reasons, however. First, Plaintiff appears to misunderstand Zoosk's position. While "dating services" may potentially be covered in both codes, Zoosk's MTD points out that *dating* cannot be considered a commercial service under either standard. Dkt. No. 17 ("MTD") at 10 (discussing that the UNSPSC Code and the SIC system "have no application to private individuals who agree to go on a date together"). Zoosk recognizes that the dating platform it provides to its clients can be considered a "service" to those clients, but the dates that those clients agree to engage in with each other cannot be characterized as a service exchanged between a seller and a buyer. *See, e.g.*, the '575 Patent Col. 3:51-55.

Second, and relatedly, Plaintiff's "dating services" argument only matters if Plaintiff adopts the second theory of infringement suggested in the FAC (*i.e.*, the theory wherein Zoosk hosts an app store that is a "services marketplace," and Zoosk is one of multiple sellers offering dating services for sale in such an app store), which Plaintiff has not done. But if that is indeed Plaintiff's theory, the FAC necessarily fails to state a claim, because there are no factual allegations to suggest that all of the elements of asserted Claim 1 are satisfied by Zoosk's purported app store. For example, there are no facts to suggest that a Zoosk-hosted app store involves "multiple…sellers of services," that a Zoosk app-store "automatically evaluat[es] and match[es]" "buyer" requests with Zoosk applications, or that Zoosk's purported app store "recogniz[es] at least one of each, language, emotion, social intelligent, character and characteristics of at least one of the participants by analyzing acoustic or imagery signals collated with the at least one of the participants," all of which are elements required by asserted Claim 1.[2]

---

[2] Rule 11 prevents Plaintiff from alleging in good faith that Zoosk operates any such app store involving multiple app providers. *See* MTD at 6, n.3.

Plaintiff attempts to muddy the waters in its Opposition by arguing that Zoosk's Motion to Dismiss cannot be decided without first addressing claim construction issues. Opp. at 24-25. Plaintiff points to *Nalco*, where the Federal Circuit overturned the district court's order granting a motion to dismiss because the district court based its dismissal on a *plausibly* contested claim construction issue. *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018). However, Zoosk's Motion to Dismiss does not require construction of any of the terms identified by Plaintiff. Even if Plaintiff is right about what every single claim term means, the FAC does not contain *facts* to make any of these claim terms relevant to a plausible infringement theory. Zoosk's argument is that there are no facts alleged to suggest infringement under *any* conceivable reading of the claims. The total absence of any credible factual allegations to suggest infringement by Zoosk is, of course, consistent with the common-sense conclusion that a patent directed to buyers and sellers of services in a marketplace is inapplicable to a dating app that helps connect people looking for dates. MTD at 5. Such a common-sense conclusion is appropriate at the motion to dismiss stage where no facts suggest a plausible claim. *See Moody v. Morris*, 608 F.Supp.2d 575, 579 (S.D.N.Y. Apr. 13, 2009) ("This fundamental difference between [the Accused Product] and the patents here in issue requires dismissal of the first claim (for patent infringement) of plaintiff's Amended Complaint"); *see also Ottah*, 884 F.3d at 1141-42.

### B. Plaintiff Cannot Plausibly Allege that Zoosk Indirectly Infringes

Plaintiff also fails to provide any relevant facts detailing how Zoosk induces its customers to infringe the '575 Patent. First, Plaintiff has once again failed to provide any reasoning as to how Zoosk's *customers* could directly infringe the claims. As Zoosk argued in its opening brief, because the FAC is devoid of any factual allegations that any of Zoosk's customers directly infringe Claim 1, there can be no induced infringement by Zoosk as a matter of law. *See, e.g. FuzzySharp Techs. Inc. v. Nvidia Corp.*, 2013 WL 2249707, *2 (N.D. Cal. Apr. 18, 2013) ("Here, Fuzzysharp fails to state a claim for inducement of infringement with respect to the '679 patent because the allegations in the complaint do not raise the reasonable inference that anyone other than NVIDIA directly infringed the '679 patent…"). Plaintiff never meaningfully addresses this argument. Instead, Plaintiff simply states the conclusion that Zoosk's customers infringe the '575 Patent, without any

analysis or citation to *factual allegations* (as opposed to legal conclusions) contained in the FAC. Opp. at 26. Notably, Plaintiff makes no effort to address the language in Zoosk's terms of service (which the FAC relies on to support its indirect infringement claim) that outright *prohibits* use of Zoosk's applications and services for commercial purposes. MTD at 7.

Plaintiff's only argument on inducement is the conclusory assertion that Zoosk induces infringement by offering digital currency on Zoosk's website. Opp. at 26. Plaintiff does not provide any analysis regarding what this digital currency is or how it could create indirect infringement. *See id.* Zoosk's "digital currency" is merely something that Zoosk's customers can use exclusively with Zoosk to enhance their experience on the dating platform. It is never traded among app users, and it is certainly not the basis of any sales transactions between two people looking to connect for a date. The FAC dose not allege otherwise.

## II. THE '575 PATENT CLAIMS INELIGIBLE SUBJECT MATTER UNDER §101

The '575 Patent is ineligible under 35 U.S.C. § 101. Plaintiff's § 101 arguments consist largely of lengthy quotations to the FAC's conclusory allegations, without further analysis or citations to case law. The only quasi-substantive argument Plaintiff makes is to suggest that the '575 Patent's § 101 problems "were overcome by amending the claims" during prosecution, citing the examiner's (pre-*Alice*) notice of allowance as evidence of eligibility. Opp. at 19-20; *see also* FAC ¶28. But this argument is irrelevant, as §101 eligibility is a legal question on which the Court owes no deference to the examiner. *E.g.*, *Fitbit Inc. v. AliphCom,* 2017 WL 819235, at *18 (N.D. Cal. Mar. 2, 2017). As discussed below, the '575 Patent fails the *Alice* test, and there is nothing Plaintiff can do to save it.

### A. Alice Step One: the '575 Patent is Directed to the Fundamental Economic Practice of Matching Buyers and Sellers

The '575 Patent is directed to a fundamentally abstract concept, namely, matching buyers and sellers. A wealth of precedent teaches that the general concept of matching sellers' offers to interested customers is the type of fundamental economic practice that has long been considered an abstract idea. *See, e.g., OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362 (Fed. Cir. 2015) (offer-based pricing method that used computers match offers to sell with buyers) (collecting

cases); *Morsa v. Facebook, Inc.*, 77 F. Supp. 3d 1007, 1013 (C.D. Cal. 2014) ("matching consumers with a given product or service" is an abstract concept that "has been practiced as long as markets have been in operation") (quoting *Tuxis Techs, LLC v. Amazon.com, Inc.*, 2014 WL 4382446, at *5 (D. Del. Sept. 3, 2014); *LendingTree, LLC v. Zillow, Inc.*, 656 F. App'x 991, 995-96 (Fed. Cir. 2016) (unpublished) (claims for automated matching of loan offers to loan applicants held ineligible under § 101 as abstract idea). Plaintiff fails to address the cases and arguments raised by Zoosk in its Motion to Dismiss because Plaintiff has no meritorious response. Instead, Plaintiff resorts to copying-and-pasting legal conclusion allegations from the FAC. Opp. at 15-17.

### 1. The '575 Patent is Not Directed to an Improvement in Computers

Plaintiff argues that the '575 Patent is patent eligible because it "provides an improvement in computers as tools, not abstract ideas that use computers as tools." Opp. at 20. This legal conclusion is unsupported by any factual allegations in the FAC, however. Plaintiff merely asserts that in "the steps of evaluating and matching the offers and the requests," the '575 Patent method "provides customization information for participants in the service marketplace," which improves a computer's ability to process information, Opp. at 16, and that the claimed system "can analyze and summarize more efficiently for interested consumer attributes or patterns of the service marketplace" because the transactional information "is well defined by the services classification and material terms of the present invention." Opp. at 21; the '575 Patent Col. 16:62-67. Even accepting these allegations as true, they do not suggest that the '575 Patent improves the *functioning of computers*, as opposed to improving the flow of information in the abstract. "This is not what the Supreme Court meant by improving the functioning of the computer itself nor is it consistent with [Federal Circuit] precedent applying this concept. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363 (Fed. Cir. Mar. 6, 2020) (holding that a claimed invention that "merely improves the abstract concept of delivering targeted advertising using a computer only as a tool" is not eligible).

The '575 Patent's claimed "invention" would make this purely economic process more efficient regardless of whether or not computers are involved, confirming the abstract nature of the claims. *See, e.g., CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir.

2011) ("a method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible").  Plaintiff never addresses Zoosk's argument that if the '575 Patent's claimed matching method is performed by a human instead of a computer, an increase in efficiency would still be achieved.  Thus, Plaintiff tacitly concedes that the '575 Patent only (arguably) increases the efficiency of the abstract seller-buyer matching method, not the efficiency of a computer system itself.

Plaintiff argues that claim 1 of the '575 Patent is not merely an abstract process because examiner stated in the Notice of Allowability that "emotional intelligence, for example, has not been subject to evaluation without personal intervention." Opp. at 18-19.  But the examiner's finding is entitled to no deference for purposes of the § 101 analysis, *Fitbit,* 2017 WL 819235, at *18, and novelty is not relevant to the *Alice* step one inquiry in any event, *Diamond v. Diehr*, 450 U.S. 175, 190 (1981) (novelty is distinct from §101 inquiry).  Moreover, as noted in Zoosk's Motion, and ignored by Plaintiff, the claim language surrounding the "recognition" element does not actually require this step be performed "without personal intervention." *See, e.g., Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (step one inquiry requires analysis of the language of the claims).

Plaintiff also argues that its claims are not directed to an abstract idea because the step of "analyzing" certain information and comparing it to information collected on at least one of the participants is not a law of nature, natural phenomenon, or abstract idea. Opp. at 18.  However, the Federal Circuit has provided explicit guidance that this sort of "analyzing" step falls squarely within the realm of abstract ideas. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018) ("We have explained that claims focused on collecting information, analyzing it, and displaying certain results of the collection and analysis are directed to an abstract idea.") (quotation omitted); *see also Elec. Power Grp.,* 830 F.3d at 1354 (courts "have treated analyzing information by steps people go through in their minds, or by mathematical algorithms, without more, as essentially mental processes within the abstract-idea category").

Finally, Plaintiff contends that the claims are not directed toward an abstract idea because Claim 7 "further comprises a step of data-mining the offers and the requests to discover at least one

1    transactional attribute of one, a portion, or all of the participants." Opp. at 19. However, Federal
2    Circuit precedent explicitly dispels Plaintiff's argument once again: "the concept of '1) collecting
3    data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in
4    a memory'" is abstract at *Alice* step one. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
5    850 F.3d 1332, 1340 (Fed. Cir. 2017) (*quoting Content Extraction and Transmission LLC v. Wells
6    Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014)). Notably, the specification makes
7    clear that data mining and data-mining software were pre-existing technologies. '575 Patent at Col.
8    16:14-27. Merely adding preexisting computer techniques to the concept of a marketplace for
9    matching buyers and sellers is precisely the type of abstract concept that fails *Alice* step one.
10   *Intellectual Ventures*, 850 F.3d at 1340.

**2.    The Purposes of the '575 Patent Are Not Related to Technical Problems**

12        Plaintiff argues that the '575 Patent's claims are not abstract because they are directed
13   toward solving "technical problems" with "technical solutions." Opp. at 16. Despite use of these
14   buzz words, Plaintiff is unable to bring forward a single stated purpose of the '575 Patent that is
15   actually directed to a technical problem. Plaintiff raises four purposes served by the '575 Patent,
16   but all four are related to abstract ideas, not technical problems.
17        To start, Plaintiff argues that the '575 Patent "provide[s] an integrated management tool to
18   shorten transaction and fulfillment cycles," but creating a quicker and more efficient *transaction* is
19   clearly a business purpose rather than a technical one. *See* Opp. at 20. Similarly, "improv[ing] the
20   communication and interaction in the service marketplace" is also a fundamentally business
21   concern that is not unique to any technological environment. *See id.* Furthermore, a patent that
22   seeks "to mine customer data not previously available," is also directed toward an abstract concept.
23   *See id.*; *Intellectual Ventures*, 850 F.3d at 1340. Finally, attempting to create a method that is faster
24   than the prior art by "reduc[ing] manual analysis and data consolidation" does not solve a technical
25   problem. *See* Opp. at 20; *Walker Digital, LLC v. Google, Inc.*, 66 F.Supp.3d 501, 511 (D. Del.
26   Sept. 3, 2014) ("Even accepting that the use of a computer increases speed and efficiency of
27   performing the steps of the claims, and improves the likelihood of preserving the anonymity of the
28   first and second parties, these characteristics do not save the claims").

### B.      Alice Step Two: the '575 Patent Lacks an Inventive Concept

Plaintiff makes three arguments in an attempt to show that the '575 Patent's abstract concept can be saved by an inventive step in the claims, but all fail.  First, Plaintiff's heavy reliance on the '575 Patent's file history to prove that the claims contain an inventive concept ignores settled law. Opp. at 17-19.  "[P]rior determinations regarding obviousness and novelty have no bearing on whether the asserted claims are patent-eligible under § 101." *PlanetID, LLC v. Digify, Inc.*, Case No. 19-cv-04615-JST, Dkt. No. 30, Order Granting Motion to Dismiss (Mar. 20, 2020) (citations omitted).

Second, Plaintiff's invocation of alleged technological improvements discussed in the '575 Patent's specification is of no help to Plaintiff, because the specification disclosures are entirely generic.  Opp. at 20-21.  For example, the specification does not describe the computers and network components needed to make any of these improvements, but instead just describes them at a high level in purely functional terms. *Procter & Gamble Co. v. QuantifiCare Inc.*, 288 F.Supp. 3d 1002, 1019 (N.D. Cal. 2017) ("use of purely functional language is indicative of abstractness."). Additionally, while Plaintiff alleges inventive concepts by pointing to improvements discussed in the specification, the claim language itself never explains *how* the technology carries out this improvement.  *See Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04414-JST, Dkt. No. 169 at 7 (N.D. Cal. Mar. 4, 2019) ("The '488 patent also lacks inventiveness. The patent's alleged improvement on the prior art and the claims themselves suffer from a disconnect: the latter fail to explain how the technology carries out the improvement."); *Intellectual Ventures I LLC v. Symantec Corp.*, 838 F.3d 1307, 1316 (Fed. Cir. 2016) ("when a claim directed to an abstract idea 'contains no restriction on how the result is accomplished . . . [and] [t]he mechanism . . . is not described, although this is stated to be the essential invention'" then the claim is not patent-eligible) (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015)); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1362 (Fed. Cir. 2017) ("To save a patent at step two, an inventive concept must be evident in the claims").  In fact, it is impossible for Plaintiff to show how these alleged technological improvements are carried out in the claims because the claims never actually mention any hardware or technical components at all.

Third, Plaintiff makes the bare assertion that the '575 Patent's claimed method is inventive because it facilitates its transactional process "in a way that a human being making calculations could not." Opp. at 21. This argument is not supported by any analysis detailing *why* a human could not perform these steps, likely because humans *can* functionally perform the steps of the '575 Patent. In fact, as Zoosk discussed in its opening brief, "the method steps have been routinely performed by humans (even without the aid of computers) in a variety of settings such as temp agencies and staffing agencies." MTD at 15 (citing *Jackson v. Long*, 289 So. 2d 205, 206 (La. Ct. App. 1974) (discussing staffing agency's method). While using computers might very well speed up the '575 Patent's method, such a contribution does not transform an abstract idea into a patent-eligible invention. *Bancorp Servs., LLC v. Sun Life Assur. Co. of Can. (U.S.)*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("the fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter").

## **CONCLUSION**

Plaintiff's Opposition confirms that Plaintiff is unable to allege any plausible theory of direct or indirect infringement against Zoosk. Further, Plaintiff's Opposition reveals that Plaintiff is unable to meaningfully address any of Zoosk's arguments that the '575 Patent is directed to an abstract, foundational economic concept, and does not contain any improvement to technology or computer functionality. Accordingly, because Plaintiff cannot amend its complaint to assert any non-frivolous claim, Zoosk respectfully requests dismissal with prejudice.

Dated: June 16, 2020                                 Respectfully submitted,

By: */s/ Robert L. Uriarte*
    Robert L. Uriarte
    ruriarte@orrick.com
    ORRICK, HERRINGTON & SUTCLIFFE
    1000 Marsh Road
    Menlo Park, CA 94025
    Telephone:      650 614 7400